### DONAHOE et al. v. FRANKS.

(District Court, E. D. of Pennsylvania. September 14, 1912.)

#### No. 625.

1. SPECIFIC PERFORMANCE (§ 101*)—REPUDIATION OF CONTRACT—TENDER—EXCUSE.

It is not a prerequisite to specific performance of a ·contract for the sale of real property that a tender be made of property or money where the opposite party has expressed a purpose not to comply with, but to repudiate the contract.

[Ed. Note.—For other cases, see Specific Performance, Cent. Dig. §§ 290, 295, 311–317; Dec. Dig. § 101.*

Necessity of tender of performance of contract, see note to Hosmer v. Wyoming Ry. & Iron Co., 65 C. C. A. 91.]

2. SPECIFIC PERFORMANCE (§ 66*)—RIGHT OF VENDOR.

Where a vendee may maintain a suit in equity for specific performance of a contract for the sale of land, the vendor may also maintain a bill for specific performance of the vendee's agreement to pay the. purchase money.

[Ed. Note.—For other cases, see Specific Performance, Cent. Dig. § 197; Dec. .Dig. § 66.*]

3. SPECIFIC PERFORMANCE (§ 58*)—CONTRACT—CONSTRUCTION—"RETAINED."

A contract for the sale of certain real property provided for payment of $500 cash on the making of the contract and the balance on a specified date, when the deal was to be closed. It then declared that, if the vendee should make default in paying the balance as provided, the $500 payment should be forfeited to the vendors and "retained" by them as liquidated damages for breach of the contract, and for the failure of the vendee to pay the balance of the consideration. *Held*, that the word "retained" could not be construed to mean "accepted," and that the $500 payment should be regarded as security only for the performance of the

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

contract by the vendee, and its retention by the vendors on the vendee's refusal to perform did not preclude them from maintaining a suit for specific performance of the vendee's obligation to pay the balance of the price.

[Ed. Note.—For other cases, see Specific Performance, Cent. Dig. §§ 179, 180; Dec. Dig. § 58.*

For other definitions, see Words and Phrases, vol. 7, p. 6196.]

In Équity. Suit by John Donahoe and another against Byron Franks for specific performance. On final hearing. Decree for complainants.

Linton Satterthwaite, of Trenton, N. J., for complainants.
Willis G. Kendig, of Lancaster, Pa., for respondent.

THOMPSON, District Judge. A bill was filed by the plaintiffs for specific performance by the defendant of a contract for the purchase of certain lands at Trenton, N. J. The suit was based upon an agreement in writing as follows:

"Articles of agreement, made and entered into the first day of June, A. D., nineteen hundred and ten, between John Donahoe (and Mary Donahoe, his wife) and Thomas Nolan, (and Laura Nolan, his wife) of the city of Trenton, in the county of Mercer and state of New Jersey, parties of the first part and Byron Franks, of the same place, party of the second part, witnesseth:

"The said parties of the first part, in consideration of the sum of nine hundred dollars an acre, to be paid as hereinafter provided, hereby agree to sell unto the said party of the second part, his heirs and assigns, all the certain lot, tract or parcel of land, situate in the city of Trenton, aforesaid, bounded and described as follows, to wit: [Here follows description of the land.]

"And it is mutually agreed by and between the parties hereto that the said party of the second part shall, at or before the ensealing of these presents, pay to the said parties of the first part the sum of five hundred dollars ($500), and that the balance of said consideration, to wit, the sum of twenty thousand, nine hundred and twenty dollars ($20,920), shall be paid by the said party of the second part to the said parties of the first part, at ten o'clock of the forenoon of the first day of September, A. D. nineteen hundred and ten, at the office of William M. Jamieson, in the Forst Richey building at the corner of Warren & State streets, in said city of Trenton, at which time and place the said parties of the first part will deliver to the said party of the second part a good and sufficient deed in the law for said premises.

"And it is mutually agreed that the said parties of the first part shall supply to the said party of the second part full searches in reference to said premises, and that the said deed of conveyance shall be a general warrant deed containing full covenants.

"And the said parties of the first part covenant and agree to and with the said party of the second part, that the said premises shall be free and clear of any and all encumbrances. The quantity of the land in said tract to be determined by a competent surveyor to be chosen by both parties.

"It is mutually agreed by and between the parties hereto that all clays on said premises that have been mined or piled and all clays on the parts of said premises where the surface thereof has been broken in order that clay may be taken therefrom for the purposes of the manufacture of bricks, that the said parties of the first part may have the privilege of removing all such clays off and from said premises at any time between the date of these presents and the first day of November, nineteen hundred and ten, notwithstanding that an absolute deed of conveyance therefor may have been made and delivered to the said party of the second part as aforesaid.

"And it is mutually agreed by and between the parties hereto that if the

said party of the second part should default in the payment of the said balance of said consideration at the time and place as aforesaid, that the said payment of five hundred dollars ($500) so made by the said party of the second part to the said parties of the first part shall be forfeited to the said parties of the first part and retained by them as liquidated damages for the breach of this contract, and for the failure of the said party of the second part to pay the said balance of the said consideration money as aforesaid.

"In witness whereof, the said parties of the first part with their respective wives, and the said party of the second part have hereunto set their hands and seals the day and year first above written.

"John Donahoe. [Seal.]
"Mary Donahoe. [Seal.]
"Thomas Nolan. [Seal.]
"Laura Nolan. [Seal.]
"Byron Franks. [Seal.]

"Signed, sealed, and delivered in the presence of Wm. M. Jamieson."

The agreement was duly acknowledged before a master in chancery of New Jersey. Under the agreement the purchase was to be completed September 1, 1910. The bill sets forth that the plaintiffs, at the request of the defendant, executed in writing on August 31, 1910, an agreement to extend the time for performing the contract by the defendant from the 1st day of September, as expressed in the contract, until the 3d day of October, 1910; that the defendant had the premises surveyed by Carl Rickey, civil engineer and surveyor selected by him, who reported the quantity of land in the tract to be 23.42 acres; that the purchase price of the premises at $900 an acre in accordance with the survey amounted to $21,078, which amount the plaintiffs agreed to accept in lieu of the $21,420 named in the agreement; that the sum of $500 was paid by the defendant at the time of the execution of the agreement, and there remained unpaid the sum of $20,578; that on October 3, 1910, pursuant to the agreement of extension, the plaintiffs were present at the place mentioned in the agreement with a deed executed by plaintiffs and their respective wives, conveying the premises clear of incumbrances, the deed being a general warranty deed with covenants against all incumbrances or defects in the title, and that they tendered themselves ready to deliver the deed and full searches showing the premises to be free from all incumbrances, but that the defendant failed to appear at the time and place agreed upon to pay the balance of the purchase money, and to receive delivery of the premises. The bill further averred that the plaintiffs had since that time frequently requested the defendant to perform his contract and pay the balance of his purchase price, and were at all times ready to deliver the deed and searches to the defendant on his paying the remainder of the purchase price, but the defendant had always refused to perform his part of the contract, and to pay the balance of the purchase price and accept the deed. The defendant in his answer admitted the execution of the agreement, and denied—

" * * * however, that by the said agreement he agreed to purchase the premises therein described, but avers that the said agreement was an optional agreement for the purchase of the said premises, and that it was understood by and between all of the parties thereto that the said agreement

should be so held and construed, and that the failure of the said defendant to exercise the rights granted to him by the said agreement should not obligate him beyond the forfeiture of the sum of five hundred ($500.00) dollars paid by him, the said defendant, to the said plaintiffs, on the date of the execution of the said agreement."

He further denied the execution of the extension agreement at his request, and averred that while he had requested of William M. Jamieson, Esq., attorney for the plaintiffs, that he procure for him an extension of the agreement, he had been advised by Mr. Jamieson that the plaintiffs had refused to make any such extension, whereupon he had notified Mr. Jamieson that it would be impossible for him to exercise the rights granted to him by the agreement. He further denied that he had had a survey made of the premises, or that he had acquiesced in the survey of the civil engineer, or that there had ever been submitted to him a change in the purchase price by reason of the quantity of land being less than that set forth in the agreement. He admitted the payment by him to the plaintiffs of the sum of $500, and averred:

" * * * That the said sum was, by mutual agreement of all parties to the said agreement, to be forfeited by him to the said plaintiffs under the terms and conditions of the said agreement, and that it has been retained by them as liquidated damages for the failure by him, the said defendant, to exercise the rights granted to him thereunder. The said defendant denies that he is obligated to the said plaintiffs in the said sum therein mentioned, viz., twenty thousand five hundred and seventy-eight ($20,578.00) dollars, or any other sum or sums of money, and avers that the retention by the said plaintiffs of the said sum of five hundred ($500.00) dollars is, and was stipulated in said agreement, full compensation for any and all loss or damages suffered or sustained by the said plaintiffs by reason of the failure of the said defendant to exercise the said agreement, as provided in the last paragraph of the same, more fully set forth at the foot of page four of said bill."

He averred that he had received no notice either directly or indirectly of the agreement of extension, and no notice, directly or indirectly, that the plaintiffs were to meet at the place specified in the agreement of extension on October 3, 1910, or at any other place or time for the purpose of tendering to him, the defendant, the deed and searches for the premises.

The allegations of the bill are amply sustained by the testimony of the witnesses for the plaintiffs, and no evidence was introduced on behalf of the defendant. It is shown by the testimony that on June 4, 1910, three days after the execution of the agreement, the defendant entered into an agreement in writing with Martin Fitzgerald, by which the parties were to work mutually together for the best interest of both parties in the sale and improvement of all the land secured from Donahue and Nolan, and to share in all the profits of whatever nature from the property, Franks to receive 75 per cent. and Fitzgerald 25 per cent. The defendant, through Mr. Fitzgerald, had the land surveyed and marked out in lots by Carl H. Rickey, the civil engineer, in June, 1910. The survey showed the acreage to be 23.42 acres, instead of 23.8 acres, and this acreage with the equivalent diminution in the purchase price was agreed to by the defendant per-

sonally with Mr. Jamieson, attorney for the plaintiffs. On August 30, 1910, the defendant wrote Mr. Fitzgerald as follows:

"Room 5, Elmore Building,
"Trenton, N. J., Aug. 30th, 1910.
"Martin T. Fitzgerald, Trenton, N. J.

"My Dear Sir: I have a party in Buffalo that I think I can sell the lots to if you can get an extension of even 30 or 40 days and I will divide the profits with you, if we can sell to him we can make a good thing out of it. You say you can get an extension now do so, this is to your interest as well as mine.          Yours respt. [signed]  Byron Franks."

Under the authority of the above letter, Mr. Fitzgerald obtained an extension to October 3, 1910, and Mr. Fitzgerald then notified the defendant by the following letter that the extension had been secured:

"141 East State Street,
"Trenton, N. J., Aug. 31, 1910.
"Mr. Byron Franks, Lancaster, Pa.

"Dear Sir: I have secured the extension you asked for and I trust you will soon be in position to take over the property. I advised the owners that you would surely be in position before the time was up on the extension so now you must get busy on this.
"Yours very truly."

The defendant then wrote Mr. Fitzgerald as follows:

"Room 5, Elmore Building,
"Trenton, N. J., Sept. 1st, 1910.
"Martin T. Fitzgerald, Trenton, N. J.

"My Dear Sir: See L. C. Case in regard to Buffalo party, he is in communication with him. Yours respt.          [Signed]  Byron Franks."

The extension agreement was prepared by Mr. Jamieson, attorney for the plaintiffs, and delivered to Mr. Fitzgerald, who took it to the plaintiffs' place of business, where it was signed by them and delivered to Mr. Fitzgerald as agent for the defendant. Mr. Jamieson, at the request of the plaintiffs, procured searches against the property, and prepared a deed in conformity with the terms of the agreement which was executed and acknowledged by the plaintiffs and their respective wives, conveying the land in fee simple to the defendant. The plaintiffs on October 3, 1910, were present at the office of Mr. Jamieson, as agreed in the original contract and extension thereof, ready to deliver the deed and searches, but the defendant failed to appear and to pay the balance of the purchase money and to complete the sale. Whereupon Mr. Jamieson wrote the defendant, who, on October 7, 1910, replied as follows:

"Room 5, Elmore Building,
"Trenton, N. J., Oct. 7, 1910.
"William M. Jamieson, Esq., Trenton, N. J.

"My Dear Sir: In reply to your letter will say, in the contract I signed with Donahue & Nolan there was specific liquidated damages, a forfeit of $500. I am the loser. Thanking you for any favors you have done me, I remain,          Respt. yours [signed]  Byron Franks, Lancaster, Pa."

[1] It is apparent that Mr. Fitzgerald in securing the extension was acting under the authority of the defendant, and whether the

defendant was notified by Mr. Fitzgerald of the time when the plaintiffs were present at Mr. Jamieson's office to tender the deed and searches is immaterial, as it is not a prerequisite to specific performance that a tender be made of property or money where the opposite party has expressed a purpose not to comply with, but to repudiate, the contract. Blanton v. Kentucky, etc., Co. (C. C.) 120 Fed. 318; Pollock v. Brainard (C. C.) 26 Fed. 732; Cheney v. Libby, 134 U. S. 68, 10 Sup. Ct. 498, 33 L. Ed. 818; McCullough v. Sutherland (C. C.) 153 Fed. 418.

[2] It is well established that, where a vendee may maintain a suit in equity for specific performance of an agreement of sale of lands, the vendor may maintain a bill for the specific performance of the vendee's agreement to pay the purchase money. "The right of a vendor to come into a court of equity to enforce a specific performance is unquestionable. Such subjects are within the settled and common jurisdiction of the court." Mr. Chief Justice Marshall in Cathcart v. Robinson, 5 Pet. 264, 8 L. Ed. 120. See, also, Raymond v. San Gabriel, etc., Co., 53 Fed. 883, 4 C. C. A. 89; McCullough v. Sutherland (C. C.) 153 Fed. 418. "The granting of the equitable remedy of specific performance is, in the language ordinarily used, a matter of discretion, not an arbitrary, capricious discretion, but of a sound, judicial discretion, controlled by established principles of equity, and exercised upon a consideration of all the circumstances of each particular case. Where, however, the contract is in writing, is certain in its terms, is for a valuable consideration, is fair and just in all its provisions, and is capable of being enforced without hardship to either party, it is as much a matter of course for a court of equity to decree its specific performance as for a court of law to award a judgment of damages for its. breach." Pomeroy's Equity, § 1404.

[3] The defendant contends, however, that the agreement is alternative in its terms, and is, in effect, an option upon his part either to pay the purchase money and take the land, or to forfeit the $500 paid down at the time of the execution of the agreement as liquidated damages, relying upon the final paragraph of the agreement, which is as follows:

"And it is mutually agreed by and between the parties hereto that if the said party of the second part should default in the payment of the said balance of said consideration at the time and place as aforesaid, that the said payment of five hundred dollars ($500) so made by the said party of the second part to the said parties of the first part shall be forfeited to the said parties of the first part and retained by them as liquidated damages for the breach of this contract, and for the failure of the said party of the second part to pay the said balance of the said consideration money as aforesaid."

The question is whether the sum provided to be forfeited as "liquidated damages" was intended as security for the performance of the contract, or whether under the clause quoted above the contract is to be construed as an option by which, at the election of the defendant, he could pay the purchase money and take the land, or refuse to take the land and lose the money which had been paid.

The fact that the sum is stated to be "liquidated damages" is immaterial unless the contract is to be construed as an option, and the forfeiture of the sum named is to be substituted for the payment of the purchase money at the defendant's election.

"The difference between penalty and liquidated damages is, as regards the common-law remedy, most material; for according to common law, if the sum named is not a penalty, but the agreed amount of liquidated damages, the contract is satisfied either by its performance or the payment of the money. But, as regards the equitable remedy, the distinction is unimportant; for the fact that the sum named is the amount agreed to be paid as liquidated damages is, equally with a penalty strictly so called, ineffectual to prevent the court from enforcing the contract in specie." Fry's Specific Performance, § 146.

"The simplest illustration of this is the ordinary case of a stipulation on the sale of real estate that if the purchaser fail to comply with the condition he shall forfeit the deposit, and the vendor shall be at liberty to resell and recover as and for liquidated damages the deficiency on such resale and the expenses. Such a condition has never been held to give the purchasers the option of refusing to perform the contract if he choose to pay the penalty, nor to stand in the way of specific performance of the contract." Id. § 147.

"Notwithstanding the contract stipulates for the payment of liquidated damages in case of failure to perform, the court may decree specific performance, unless an option for payment instead of performance be given in the contract." Waterman on Specific Performance, § 22. Hull v. Sturdivant, 46 Me. 34.

"If the agreement be construed as giving to the party the option to do the act or pay a certain sum, equity will not interfere. In determining the question, the court will have regard to the whole agreement, and not merely look at the language expressing the penal sum. It may treat the word 'penalty' as meaning liquidated damages, or the words 'liquidated damages' as meaning a penalty. It may do this, notwithstanding the contract be alternative in its form, if the court can clearly see that the contract is to perform one of the alternatives." Waterman on Specific Performance, § 23.

The language of the agreement is sufficiently plain to be construed without taking into consideration any extrinsic evidence as to the intention of the parties as to its construction. It is clear that what the parties intended as set out in the agreement was that the plaintiffs should sell to the defendant the tract of land in question, and that the defendant should pay the sum of $500 down and the balance upon the delivery of the deed. There is nothing in the language of the contract which indicates that the defendant at his election should pay the purchase money and accept the deed or forfeit the $500 deposited and avoid the completion of the contract. The penalty by way of liquidated damages was intended as security for the performance of the contract by the defendant. The contract is for the sale of the land, and the damages are for its breach, and equity will enforce the contract against the party in default, and not permit a party to pay the damages and refuse to perform. Brown v. Norcross, 59 N. J. Eq. 427, 45 Atl. 605; O'Connor v. Tyrrell, 53 N. J. Eq. 18, 30 Atl. 1061. In both of the cases last above cited the parties were bound by an agreement with a stipulation for liquidated damages in case of failure to perform, and the stipulation was construed to be intended to secure the per-

formance of the contract. In the latter case—O'Connor v. Tyrrell—Chancellor McGill held that under such a contract it was not optional with the defaulting party to perform or to pay the sum named, and that damages did not become a factor in the consideration of the remedies until there had been an honest effort to perform and a failure, and he decreed specific performance.

The agreement to pay liquidated damages in the present case I think must be construed in accordance with the foregoing authorities. It clearly was not the intention of the parties that the defendant should, at his election, accept the deed and pay the purchase money, or refuse to perform and forfeit the deposit money, and the stipulation for liquidated damages must therefore be construed as a security for performance. The defendant, however, contends that the agreement has been carried to completion by both parties because the defendant agreed to pay and the plaintiff agreed to accept a sum of money as liquidated damages, and the defendant did pay, and the plaintiffs did accept, the same. He relies upon the decision in Moss v. Wren, 102 Tex. 567, 113 S. W. 739, 120 S. W. 847, where a stipulation was contained in the contract that, upon default, "the purchaser shall forfeit the amount paid hereon to seller, and the same shall be paid to seller by said trustee and accepted by said seller as and for liquidated damages for such injury and damages as the seller may suffer by reason of the nonperformance of this contract on the part of the purchaser," and where it was held that, inasmuch as the vendor had agreed to "accept" the sum as liquidated damages, the court would not decree specific performance, but hold him to his contract to accept a certain sum in lieu of performance. It is urged by the defendant that the language in the last paragraph of the contract providing that the $500 shall be "retained" should be construed as though the word "retained" read "accepted." I do not think the language will bear that construction. The word "retain" means to hold back. The money was deposited in the hands of the plaintiffs, and they are no doubt entitled to hold it back pending the disposition of the controversy, but holding it back is not in any sense equivalent to accepting it in lieu of the performance of the contract. The deposit was made as security for the performance of the contract, and its retention by the plaintiffs surely puts them in no worse position than if it had not been made at the time, but it had been agreed that the amount should be paid in the future on failure to perform.

I am of the opinion that the plaintiffs are entitled to the relief prayed for, and a decree may be entered accordingly.