CARTER v. SMITH et al. (No. 7354.)*

(Court of Civil Appeals of Texas. Dallas. Jan. 22, 1916. Rehearing Denied March 11, 1916.)

1. SPECIFIC PERFORMANCE ⊕⟆58—CONTRACT FOR SALE OF LAND.

Where a contract for the sale of land provided in its concluding clause that if the purchaser failed or refused to perform by the payment of the purchase money as provided, without default of the vendor, then the purchaser should "as a full penalty and liquidated damages for his breach of this contract forfeit to [the vendor] the first payment of $500 this day made upon the land herein contracted for," such contract was alternative, and gave the purchaser the choice of paying for the land or of failing or refusing to do so and forfeiting the first payment, in view of the declaration that the penalty should be in payment of liquidated damages in case of breach, so that specific performance of the contract at the purchaser's suit could not be decreed after default in the payment of the balance of the price.

[Ed. Note.—For other cases, see Specific Performance, Cent. Dig. §§ 179, 180; Dec. Dig. ⊕⟆58.]

2. SPECIFIC PERFORMANCE ⊕⟆126(2)—ALTERNATIVE CONTRACT TO SELL LAND.

A decree for specific performance of a contract to sell land must follow the substantial, if not the precise, terms of the contract, so that it cannot be entered where the contract is alternative in favor of the purchaser, permitting him to perform or to forfeit a payment for breach.

[Ed. Note.—For other cases, see Specific Performance, Dec. Dig. ⊕⟆126(2).]

3. SPECIFIC PERFORMANCE ⊕⟆121(10)—ABANDONMENT OF CONTRACT — SUFFICIENCY OF EVIDENCE.

In the purchaser's suit for specific performance of a contract to convey land, evidence held sufficient to sustain the finding that the purchaser abandoned the contract.

[Ed. Note.—For other cases, see Specific Performance, Dec. Dig. ⊕⟆121(10).]

4. APPEAL AND ERROR ⊕⟆1010(1)—REVIEW—FINDING.

The fact that the evidence will sustain a finding contrary to that of the trial court affords the appellate court no sufficient reason for interfering with the finding below, provided the evidence was also sufficient to sustain it.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3979–3981; Dec. Dig. ⊕⟆1010(1).]

5. SPECIFIC PERFORMANCE ⊕⟆121(10)—ABANDONMENT OF CONTRACT—INTENT.

In the purchaser's suit for specific performance of a contract to sell land, the fact that the vendors' title was not good was not conclusive on the point whether the purchaser abandoned the contract by declining to proceed further with the trade.

[Ed. Note.—For other cases, see Specific Performance, Dec. Dig. ⊕⟆121(10).]

Appeal from District Court, Dallas County; Kenneth Foree, Judge.

Suit by R. O. Carter against James A. Smith and others. From a judgment for defendants, plaintiff appeals. Affirmed.

Morrow & Morrow, of Hillsboro, and C. M. Smithdeal, of Dallas, for appellant. Barry Miller, Meador, Davis, Johnson & Golden, and Smith, Robertson & Robertson, all of Dallas, for appellees.

RASBURY, J. R. O. Carter, appellant, sued James A. Smith and his wife, M. M. Smith, Mollie D. Kirby, personally and as executrix of the will of her husband, M. W. Kirby, deceased, Union Terminal Company and D. E. Johnson to enforce specific performance of a written contract to convey lands. A jury was waived and the cause submitted to Hon. Kenneth Foree, Judge, resulting in judgment against appellant, from which this appeal is prosecuted.

The pleading in the court below supports the issues presented in the briefs of both

parties, and for that reason it is unnecessary to recite same.

Upon request of appellant the trial judge prepared and filed conclusions of fact. Many of the findings are challenged on the ground that they are without support in the evidence. For that reason we do not attempt to state such findings. Nor will we prepare conclusions of fact upon the whole case, since we do not regard it necessary to do so in order to dispose of the case. We will, however, upon the issues we do discuss, state our conclusions of fact as deduced from the evidence bearing upon such issues.

[1] The contract, which is the basis of the suit, omitting formalities and the acknowledgment of the parties, is as follows:

"This agreement this day entered into by and between Jas. A. Smith and his wife, M. M. Smith, party of the first part, and R. O. Carter, party of the second part, all of Dallas county, state of Texas, witnesseth:

"First. For and in consideration of the sum of five hundred dollars ($500.00), to us in hand paid the receipt of which is hereby acknowledged, and the further sum of thirty-five hundred dollars ($3,500.00) to be paid in cash at the date of the execution of the conveyances hereinafter called for, and the further consideration of eight thousand dollars ($8,000.00) to be paid, to be evidenced by three notes payable to the order of the said James A. Smith, each in the sum of two thousand six hundred and sixty-six dollars and sixty-six and two-thirds cents ($2,666.66⅔) payable one, two and three years after date, secured by vendor's lien, interest 7 per cent, payable semiannually, party of the first part does hereby covenant, contract and obligate itself to convey to said R. O. Carter, party of the second part, by regular deed of conveyance, with the usual warranties the following described property, situated in the city and county of Dallas, state of Texas, the same being all of block 340, according to Murphy & Bolanz official map of the city of Dallas, the same fronting 100 feet on the S. side of Young street and 100 feet on the N. side of Columbia street and 200 feet on the E. side of Broadway street, and being a tract of land 100 by 200 feet.

"Second. The party of the first part agrees to furnish the party of the second part an abstract of title to said land showing good and merchantable title in the first parties, and after delivery of same to second party he shall have reasonable time within which to have said title passed upon by his attorney, and it is hereby agreed and said second party has sixty days from date within which he can pass upon said title and accept the same, and he said second party shall have the full term of sixty days from date within which to accept the title under the terms of this agreement without forfeiture upon the obligation of the parties of the first part to convey title to him as herein provided.

"Third. If, however, said first parties cannot show good and merchantable title in themselves to said land, they shall have reasonable time after the knowledge of such fact within which to make their title merchantable, and if their said title cannot be made merchantable within said reasonable time, the parties of the first part shall refund to said second party the $500 paid them under the terms of this contract, and this obligation shall become null and void.

"Fourth. If said first parties are able to show good and merchantable title, as aforesaid, in them to the lands herein described, the said second party agrees to pay the said first party upon the execution and delivery of the said deed to him, as aforesaid, the further sum of $3,500 cash, and to execute his notes for the balance of the purchase money as above provided; and in the event said second party fails or refuses to perform the terms of this contract by the payment of the purchase money, as above provided for, in money and notes, without default of the party of the first part, as above defined, then said second party shall as a full penalty and liquidated damages for his breach of this contract forfeit to first party the first payment of $500, this day made upon the land herein contracted for."

The construction placed upon the contract by respective counsel, aside from all other issues in reference thereto depending upon facts aliunde the contract, differs widely. The position of counsel for appellant is that the essential thing intended by the parties was the conveyance of the land, and that the agreement to forfeit the $500 was intended as a means of coercing performance rather than a satisfaction of the contract, if appellant failed or refused in that respect. The position of counsel for appellee is that the contract is alternative and gave appellant the election of performing the contract or of refusing to do so. Thus a construction of the intention of the parties, gathered from the contract, is obviously of prime and initial importance; and such intention on the issue so raised is to be gathered wholly from the concluding clause thereof, since the remaining provisions of the contract refer wholly to other matters.

In reference to such contracts the Supreme Court of this state say:

"Much has been well said in the opinions of this court * * * affirming the right to specific performance of contracts for the conveyance of land which contain stipulations for the payment of sums of money, called penalties, or liquidated damages, inserted to secure the performance of the act agreed to be performed. A different class of contract is that where one of the parties is given the election to do something else in lieu of conveying the land." Redwine v. Hudman, 104 Tex. 21, 133 S. W. 428.

In the case cited the court adopts as a correct rule for determining the class to which a given contract belongs the following:

"The question always is, what is the contract? Is it that one certain act shall be done, with a sum annexed, whether by way of penalty or damages, to secure the performance of this very act? Or is it that one of two things shall be done at the election of the party who has to perform the contract, namely, the performance of the act or the payment of the sum of money? If the former, the fact of the penal or other like sum being annexed will not prevent the court enforcing the performance of the very act, and thus carrying into execution the intention of the parties. If the latter, the contract is satisfied by the payment of a sum of money, and there is no ground for proceeding against the party having the election, to compel the performance of the other alternative." Fry, Spec. Per. § 115.

We conclude, in the light of the rule stated, the contract was alternative, and gave appellant the choice of two courses, a compliance with either of which would relieve him of all liability. Giving to the language of the contract its ordinary meaning, appellant's obliga-

tion was, if appellees' title was good, to accept the land upon the agreed terms. Or he could, title being good and appellees without default, breach or fail or refuse to perform the contract. The contract expressly provides that if appellant fails or refuses to perform, he shall forfeit to appellees the $500 deposited by him. For what purpose? The contract itself furnishes the answer when it declares it shall be the agreed or liquidated damages for the breach of the contract. In short, its breach is permitted by forfeiting the $500. The contract provides as much. This conclusion is sustained by the further provision that the $500 shall, if forfeited, be "full penalty and liquidated damages" for such "breach" thereof. While the word penalty is descriptive merely of the sum agreed upon, the term "liquidated damages" means, in connection with penalty, that said sum was ascertained and fixed as fair compensation for appellees in the event appellant elected or chose to breach or recede from the contract. The foregoing conclusions are fairly deducible from the language of the contract. A contrary conclusion can find little, if any, support in the language of the contract. No expression is found in the contract indicating that the penalty was intended as a means of coercing performance. The amount of the penalty in its relation to the sum agreed to be paid for the land is insignificant and more nearly represents perhaps the loss which would befall appellees, than a sum which would induce appellant to perform the contract, rather than submit to the forfeit. However, if there was nothing at all in the contract indicating the intention of the parties, we would be inclined to hold that the penalty was inserted to coerce performance. But when, as here, the parties declare the penalty is to be in payment of the agreed or liquidated damages in case of breach, we are constrained to conclude that such was the intention. A contract quite similar in its provisions with the one under discussion was construed in Moss v. Wren, 102 Tex. 567, 113 S. W. 739, 120 S. W. 847. The only material difference in the contracts is that by the one in the case cited the seller agreed to "accept" the penalty in satisfaction of the breach of the contract. It is true that the Supreme Court, in receding from its original conclusion that the sum was inserted as a means of coercing performance, said, "If nothing had been said as to the acceptance of the $1,000 by the seller, our original opinion would have been correct," seemingly making the case turn upon the agreement by the seller to accept the sum. We think the Supreme Court did mean to say that the contract must bind the seller to accept the agreed sum, but did not mean that he could only be held to be bound when the precise word "accept" was used for that purpose. It occurs to us that when appellees assented to the provision in the contract that appellant could breach the contract by forfeiting the $500, they were as much bound to accept same as they would have been had they agreed in express words to do so, and that the Supreme Court meant no more than that. It was precisely so ruled in the case of Simpson v. Eardley, 137 S. W. 378, and wherein the Supreme Court denied the writ of error. There is no provision in the contract in the instant case that appellant should accept deed from appellees or that appellees should accept the balance of the cash and deferred note payments, but it will not be contended that each was any the less bound to do so had there been no failure of title or breach of contract.

[2] It being clear, then, that appellant had the election of two courses to pursue, the remedy of the parties was not mutual, and specific performance should not have been decreed. This is true for the reason that a decree of specific performance must follow the substantial, if not the precise, terms of the contract. Such a decree in this case would be one that would permit appellant, even thereafter, to perform the contract or forfeit his $500; in short, a decree requiring appellees to perform specifically but allowing appellant the choice of performing or forfeiting the agreed penalty. In such cases it has been repeatedly held the parties must resort to their remedy at law.

[3] The court below found as a fact that appellant declined to proceed under the contract within the time provided and abandoned same. While we think all other issues immaterial in view of our construction of the contract, we nevertheless further conclude that the evidence does sustain the finding of the court that appellant both declined to perform the contract and abandoned it. It is held that one may "except in the case of a perfect legal title to a corporeal hereditament," abandon "every right or interest in, title to, or ownership of property." 1 C. J. 9. Or, stated otherwise, "there is nothing in principle, to prevent the owner from abandoning his right of property in land, provided the intention to do so be evidenced by an act or deed legally sufficient to operate a divestiture of his title." Dikes v. Miller, 24 Tex. 417.

The testimony, which tended to show the refusal to proceed under the contract and an abandonment, is as follows: Appellant is the son of J. Mercer Carter, who was the agent of appellant prior and subsequent to the execution of the contract in all matters pertaining to the land in controversy in this suit. W. G. Currie, real estate broker, commenced with the elder Carter the negotiations which resulted in the execution of the contract. After the contract was executed, Smith, one of the appellees, in compliance with the contract, delivered an abstract of title to the land to an abstractor with instructions to supplement it so as to show the condition of the title to date, and deliver same to J. Mercer Carter when he called for it, but not to attach his certificate until he called for it.

The purpose of holding the certificate open was that Carter when he did call for it might have a certificate covering all matters up to the very time he received same and to avoid furnishing another supplement. Carter was advised by Smith as many as three times that the abstract was at the abstractor's office for him whenever he called for same. Carter did call at the office of the abstractor several times with different people and was told that whenever he was ready for it the certificate would be attached and the abstract delivered. He declined to take it, explaining to the abstractor that when he was ready he would advise him. Carter never did call for the abstract; nor did appellees actually deliver the same to him; nor did R. O. Carter ever call at the abstractor's office; nor was he advised that the abstract was ready for him. Having heard nothing from Carter on May 30, 1907, and construing the contract as having expired on that date, Smith, one of the appellees, secured his abstract from the abstractor and declared the $500 forfeited to him by Carter and appropriated same. Subsequent to the forfeiture and after the expiration of the time fixed by the contract Carter in casual conversation with Currie inquired whether Currie had received his commission for negotiating the sale for appellees. On being informed that he had not, Carter said he ought to have it. Currie repeated to appellees his conversation with Carter, whereupon appellees directed him to secure a written order or release of the money, and they would pay Currie his commission. Returning to Carter he secured the following:

"Mr. W. G. Currie, Dallas, Texas—Dear Sir: I am not inclined to abandon my belief that I am entitled to a return of the $500.00 I paid through you to Messrs. Kirby & Smith, as earnest money on the Berger lot No. 340, but I will concede you the right and privilege to get any adjustment for your commission for making the sale, and if one is made satisfactory to you to-day I will withdraw any and all claims on account of the $500 that I may have and end the matter.

"[Signed]         J. Mercer Carter."

Upon receipt of the letter appellees paid Currie one half of the $500, retaining the other half under their agreement with Currie that the commission should be divided in case Currie secured a purchaser. Subsequent to the foregoing and in October, 1907, J. Mercer Carter called upon appellees and sought another option upon the land or the privilege of selling it. Upon being informed that the land was not for sale Carter requested an opportunity of selling it whenever it was placed on the market, assigning as a reason the fact that he had lost his former deposit which he would like to make back. The contract to convey was executed March 30, 1907. The facts just detailed transpired before the expiration of the year 1907. The instant suit was filed April 2, 1914.

[4, 5] Under the foregoing we feel constrained to hold that the evidence was sufficient to sustain the conclusion of the trial judge that the contract was abandoned, and when there is such evidence we may not disturb the finding. While the evidence may have also sustained a contrary finding, that fact affords no sufficient reason for interference on our part. And in connection with our conclusion it may be admitted, as contended by appellant, that there was evidence adduced by appellants tending to show that appellees' title was not good, and that that was the reason that appellant declined to proceed further with the trade, and yet this court would be bound thereby, since it would not follow as a certainty that it was not the intention of appellant to abandon the contract.

There are a number of other propositions and counter propositions urged by both sides, but we do not consider them, nor deduce the facts in reference thereto because of the conclusions reached on the two issues we have discussed.

The judgment is affirmed.