## LA PRELLE et al. v. BROWN.    (No. 6166.)

(Court of Civil Appeals of Texas. Austin.
Feb. 25, 1920. On Motion for Re-
hearing, April 3, 1920.)

**1. Brokers ⚖══63(1)—Broker entitled to com-
mission if deal not consummated through
owner's fault.**

When a broker employed to sell land finds
a purchaser who is ready, able, and willing to
purchase at the price and upon the terms fixed
by the owner, he is entitled to his commission,
though through fault of the owner the deal be
not consummated.

**2. Specific performance ⚖══58 — Contract for
sale of land providing for liquidated damages
held enforceable.**

Where a contract of bargain and sale cov-
ering certain described land obligated the own-
er to convey on certain terms, and the pur-
chaser deposited a sum of money with a stake-
holder to be forfeited to the seller as liquidated
damages if the contract was not complied with
on the purchaser's part, the forfeit was not in-
tended to make the contract an option to buy,
but as evidence of the purchaser's good faith
and as an inducement for him to comply with
the contract, and as such it was capable of spe-
cific performance by either party.

**3. Brokers ⚖══64(2) — Right to commissions
not lost by seller's election to accept forfeit.**

Where a real estate broker procured a pur-
chaser secured by him to enter into a contract
with the principal for the sale of certain land,
that the contract provided for a forfeit as liq-
uidated damages in case of nonperformance on
the purchaser's part did not deprive the broker
of his right to commissions upon the purchaser's
refusal to consummate the deal without the
fault of either the broker or his principal, al-
though the principal was at liberty to waive
his right to specific performance of the con-
tract and to accept the forfeit as compensation
for its breach.

Appeal from District Court, Falls County;
Richard I. Munroe, Judge, by direction of the
Governor.

Action by Green Brown against J. Talbot
La Prelle and others. Judgment for plaintiff
on a peremptory instruction, and defendants
appeal. Affirmed.

Frank Oltorf, of Marlin, for appellants.
Spivey, Bartlett & Carter, of Marlin, for
appellee.

### Findings of Fact.

JENKINS, J. There is no dispute as to the
facts in this case. Appellant employed appel-
lee to sell for him a tract of land, and agreed
in the event he did so to pay appellee a com-
mission of $500. Appellee procured one
Boedeker, and the following contract was en-
tered into between him and appellant:

"The State of Texas, County of Falls.

"This contract of bargain and sale made and
entered into this the 29th day of December,
1916, by and between J. Talbot La Prelle, of
Bexar county, Texas, party of the first part,
and B. Boedeker, of Falls county, Texas, party
of the second part, witnesseth:

"1. That the said party of the first part has
this day bargained and sold and by these pres-
ents does hereby bargain, sell and obligate him-
self to convey or cause to be conveyed in the
manner as hereinafter stated, unto the said
party of the second part all and singular the
following described property, to wit: [then fol-
lows description of a certain $102\frac{55}{100}$ acres
of land situated about $1\frac{1}{2}$ miles northeast of the
town of Marlin, Falls county, Tex.]

"2. The consideration paid and to be paid to
said party of the first part for the above-de-
scribed property is the agreed sum of $18,000
to be paid as follows: The sum of $10,000 cash
to be paid upon delivery of deed of conveyance
hereinafter described, and a series of five prom-
issory vendor's lien notes for the principal
sum of $1,600 each, maturing on or before an-
nually, or at the option of the party of the
first part, a series of ten notes for $800 each,
maturing on or before annually; each of said
notes to be executed by the party of the sec-
ond part and payable to the order of the party
of the first part at Marlin, Texas, and each of
the said notes bearing interest at the rate of
seven per cent. per annum from date, interest
payable annually, and containing the usual de-
fault maturity and attorney's fee clauses.

"3. This contract is conditioned that the said
party of the first part will procure and deliver
to said party of the second part at the earliest
practicable date a full and complete certified
abstract of title to the above-described property,
and will permit said party of the second part
to have same examined by an attorney of the
party of the second part's selection.

"If the title as shown by the abstract is a
merchantable title, the said party of the first
part will make, execute and tender a good and
sufficient deed conveying the aforesaid property
to the said party of the second part, with full
covenants of general warranty, to complete this
contract in accordance with its terms and stip-
ulations.

"If the title to said property, as disclosed by
said abstract, is not shown to be a merchanta-
ble title, then the said party of the second part
shall procure and submit to the party of the
first part a statement in writing of the ob-
jections made to said title as disclosed by said
abstract within ten days from the delivery of
said abstract by said party of the first part
to said party of the second part.

"If said objections are of such character that
they can be cured or removed within a reason-
able time from the date hereof, then said par-
ty of the first part shall be obligated and is
hereby obligated to cure or remove such objec-
tions at his own expense, and it is hereby agreed
and understood that said party of the first part
shall have a reasonable time from and after the
date when said written statement of objections
is delivered to him within which to cure or re-
move same.

"If the title to said property as shown by the
abstract is not a merchantable title and the
objections thereto are not cured or removed by
the party of the first part in the manner and
within the time hereinbefore stated, then said

⚖══For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

party of the second part shall have the right to declare this contract at an end and no longer binding on him, and same shall thereupon become null and void, and said second party shall be entitled to the return of all money by him paid by reason of this agreement.

"The said party of the first part obligates himself to pay all taxes now due on said premises above described prior to the delivery of the deed of conveyance above referred to.

"(4) As an evidence of good faith and in earnest of this contract, said party of the second part has this day deposited with J. C. Fountain, of Falls Co., Texas, the sum of $2,000, with the express agreement and understanding, as evidenced herein, that if said party of the first part does in fact make and tender to said party of the second part a good and perfect general warranty deed conveying to said party of the second part the property hereinbefore described, for the price and subject to the terms hereinbefore stated, and does in fact deliver to said party of the second part a complete and duly certified abstract of title to said property, and if said title as disclosed by said abstract and deed is approved by the attorney of said party of the second part, within the time hereinbefore stated, and said party of the second part thereupon fails or refuses to keep and perform the obligations on him imposed by this agreement, then and in that event, the said party of the second part shall forfeit to said party of the first part the aforesaid sum of $2,000 as liquidated damages; but if said title, as disclosed by said deed and abstract or either is disapproved by said attorney for cause, and objections not removed within the time stated, then and in that event said sum of $2,000 shall be, by the said J. C. Fountain, returned to said party of the second part on demand, and this contract shall become null and void.

"If the title as disclosed by said abstract and deed is approved by said attorney, then upon the final completion of this agreement, the said sum of $2,000 shall be applied as a part of the cash payment for said property as hereinbefore stated.

"5. It is expressly agreed and understood that in the event the said party of the first part, by or through any fault or negligence on his part fails or refuses to comply with the terms and conditions of this agreement, he shall become indebted to and shall pay to said party of the second part the sum of $2,000 as liquidated damages; as evidence of good faith the said party of the first part has this day deposited with the said J. C. Fountain his certain promissory note of even date herewith for the sum of $2,000, payable to the order of B. Boedeker, and due on demand, with the understanding, as herein evidenced, that in the event said party of the first part complies with the obligations imposed on him by this contract, then and in that event the said J. C. Fountain will return said note to said party of the first part, otherwise the said J. C. Fountain will deliver said note to said party of the second part.

"This contract is executed in triplicate, and one copy delivered to each of said parties and a copy thereof delivered to said J. C. Fountain, this the 29th day of December, 1916.

"J. Talbot La Prelle.
"B. Boedeker."

Boedeker, without any fault upon the part of either appellant or appellee, refused to consummate the deal, and gave the stakeholder written instructions to turn over the $2,000 in his hands to appellant, as a forfeiture on said contract, which was done. Appellant refused to pay appellee any commission, and this suit was brought to recover the $500 commission agreed upon.

The court peremptorily instructed the jury to return a verdict for appellee for $500, which was done, and judgment was entered in accordance therewith.

## Opinion.

[1] It is well settled that when a broker, employed to sell land, finds a purchaser who is ready, able, and willing to purchase at the price and upon the terms fixed by the owner, he is entitled to his commission, though, through fault of the owner, the deal be not consummated.

In the instant case, if the contract set out in the findings of fact herein could have been specifically enforced, the appellee found such a purchaser, and the judgment of the trial court should be affirmed; otherwise it should be reversed.

The test as to whether the contract could have been specifically enforced is: Was it a contract to do a specific thing (buy the land), with a penalty annexed by way of damages to aid in securing its performance; or was it a contract to do one of two things (buy the land or pay a forfeit), at the option of the purchaser? The answer to this question must be found in the language used in the contract, read in the light of the circumstances surrounding the parties at the time of making the same. Looking to the language used, we find that the first sentence denominates it a "contract of bargain and sale." Of what—of the land, or of an option to buy the land? The contract states that the seller has "bargained and sold," and obligates himself to "convey" the land therein described, and that the purchaser has bought the same at the price and upon the terms therein stated. It further declares that—

"As an evidence of good faith and in earnest of this contract, the second party [the purchaser] has this day deposited with J. C. Fountain, of Falls Co., Texas, the sum of $2,000."

"Good faith" in what? In his intention to comply with "this contract." What contract? To pay for the land as therein stipulated. If he had the option to either purchase the land or to forfeit the $2,000, there could have been no lack of good faith in the matter, for whichever he did would have been in compliance with his contract.

The circumstances surrounding the parties at the time the contract was executed indicate that the same was for the sale of the land, and not the sale of an option to pur-

chase the same. Appellant desired to sell the land. Boedeker had examined the land, and had discussed the price and terms of the sale for several days. He had evidently made up his mind to purchase the same at the price and upon the terms finally agreed upon and embodied in the written contract. There is nothing in the circumstances surrounding the transaction which indicates that Boedeker wanted further time in which to determine whether or not he would buy the land, and was willing to pay $2,000 for such option. To our minds, both parties regarded the contract as one of "bargain and sale" of the land, and that the provision with reference to the forfeiture of $2,000 cash by the buyer, and the $2,000 note by the seller was deemed sufficient to induce each party to comply with the contract, on the part of the seller by executing a deed, and on the part of the buyer by paying for the land.

Had the contract not contained the clause with reference to the forfeiture as liquidated damages, but only as a penalty for breach of the contract, there could be no question but that it could have been specifically enforced. Did the addition of these words change the contract from one to do a specific thing to a contract to do one or the other of two things, at the option of Boedeker? Such is the contention of appellant. This contention is supported by the decisions in Simpson v. Eardley, 137 S. W. 378, Willis v. Ellis, 106 S. W. 1152, Carter v. Smith, 184 S. W. 244, and Smith v. Felder, 208 S. W. 409. These decisions are all by Courts of Civil Appeals. They rest, in our judgment, upon a wrong conception of the doctrine announced by our Supreme Court in Moss v. Wren, 102 Tex. 569, 113 S. W. 739, 120 S. W. 847. That decision was in answer to a certified question by the Court of Civil Appeals for the Second District. In the original opinion it was held that the contract could be specifically enforced. Mr. Chief Justice Gaines, speaking for the court, said:

"We have numerous decisions holding that, although there is a stipulation in the contract of this character, payment of a fixed sum of money as liquidated damages does not affect the contract for sale of the land, but that the seller can enforce specific performance. * * * We have also examined the authorities cited in the certificate upon the same proposition, and find it is amply supported by them. Lyman v. Gedney [114 Ill. 388] 29 N. E. 282 [55 Am. Rep. 871]; Hull v. Sturdivant, 46 Me. 34; Hooker v. Pynchon, 74 Mass. (8 Gray) 550; Ewins v. Gordon, 49 N. H. 444; O'Connor v. Tyrrell [53 N. J. Eq. 15] 30 Atl. 1061; Palmer v. Bowen [138 N. Y. 608] 34 N. E. 291, affirming s. c. in 18 N. Y. Supp. 638[1]; Kettering v. Eastlack [130 Iowa, 498] 107 N. W. 177 [8 Ann. Cas. 357]."

This statement of the law is supported by the great weight of authority. Redwine v. Hudman, 104 Tex. 23, 24, 133 S. W. 426; Newton v. Dickson, 53 Tex. Civ. App. 429, 116 S. W. 143; Hedrick v. Firke, 169 Mich. 549, 135 N. W. 319; Kettering v. Eastlack, 130 Iowa, 498, 107 N. W. 177, 8 Ann. Cas. 357; Donahoe v. Franks (D. C.) 199 Fed. 262; Koch v. Streuter, 218 Ill. 546, 75 N. E. 1049, 2 L. R. A. (N. S.) 210; Palmer v. Gould, 18 N. Y. Supp. 638[1]; Dooley v. Watson, 1 Gray (Mass.) 414; Higbie v. Farr, 28 Minn. 439, 10 N. W. 592; Long v. Bowing, 33 Beav. 585; Phœnix Ins. Co. v. Continental Ins. Co., 87 N. Y. 400: Laundry Co. v. Debow, 98 Me. 496, 57 Atl. 845; Fry's Specific Performance, § 146; Waterman on Specific Performance, §§ 22, 23.

In Moss v. Wren, supra, upon rehearing, the court answered that the contract there under consideration could not be specifically enforced, but in doing so it did not overrule the proposition laid down in the original opinion, that naming a fixed sum as liquidated damages in a contract for the sale of land would not prevent the same being specifically enforced. The decision upon rehearing was based on the provision of the contract that not only might the buyer pay the $1,000 forfeit, if he breached the contract, but also that the seller should accept the same "as liquidated damages for such injury and damage as the seller may suffer by reason of the nonperformance of this contract on the part of the purchaser." Judge Gaines said:

"It occurs to us that if nothing had been said as to the acceptance of the $1,000 by the seller, our original opinion would have been correct."

In Long v. Bowing, supra, the Master of the Rolls calls attention to the fact that there is no provision in the contract that the £1000 liquidated damages should be accepted in lieu of specific performance. In Donahoe v Franks, supra, wherein the contract provided that if the purchaser breached the contract the seller might retain the $500 advanced on the purchase price as liquidated damages, the court said that "might retain" would not be construed as an agreement to accept.

This is but the application of the doctrine that if a party has two distinct remedies, by pursuing one of them he waives the other. In an ordinary contract for the sale of land, the party offering to comply with the same may either have the contract specifically enforced, or have his damages for the breach thereof. If he should elect to sue for damages, he would thereby waive his right to specific performance. This right he may waive in advance by contracting to receive a fixed amount as full compensation for the damages which he may suffer by reason of the breach of the contract. Having bound himself to so accept such amount, he cannot ignore this part of the contract and demand specific performance, if the other party elects to pay the

[1] Reported in full in the New York Supplement; reported as a memorandum decision without opinion in 63 Hun. 636.

forfeit. This provision of the contract, which was the basis of the decision on rehearing in Moss v. Wren, supra, was ignored in Simpson v. Eardley, supra, and in the other cases hereinbefore cited in line with same.

Our view of the law as to this matter is succinctly stated by Mr. Justice Williams in Redwine v. Hudman, supra, as follows:

"Much has been well said in the opinions of this court, from Hemming v. Zimmerschitte, 4 Tex. 159, to Moss v. Wren, 102 Tex. 567 [113 S. W. 739, 120 S. W. 847], affirming the right to specific performance of contracts for the conveyance of land which contain stipulations for the payment of sums of money, called penalties, or liquidated damages, inserted to secure the performance of the act agreed to be performed. A different class of contracts is that where one of the parties is given the election to do something else in lieu of conveying the land. "The principle which controls is well settled. It is thus stated: 'The question always is, What is the contract? Is it that one certain act shall be done, with a sum annexed, whether by way of penalty or damages, to secure the performance of this very act? Or is it that one of two things shall be done at the election of the party who has to perform the contract, namely, the performance of the act or the payment of the sum of money? If the former, the fact of the penal or other like sum being annexed will not prevent the court enforcing the performance of the very act, and thus carrying into execution the intention of the parties. If the latter, the contract is satisfied by the payment of a sum of money, and there is no ground for proceeding against the party having the election, to compel the performance of the other alternative.' Fry on Specific Performance, § 115. See, also, 36 Cyc. 571, 572. "Whether a contract belongs to one class or the other depends on the intention deduced from a proper construction of the instrument in which the parties have expressed their agreement."

[2] We hold that the contract here under consideration is one to do a specific thing, namely, on the part of the purchaser, to buy the land; that his deposit of $2,000 as a forfeit was not intended to make the contract an option to buy, but was an evidence of his good faith in making the contract of purchase, and as an inducement for him to comply with same. Such being the case, it was capable of being specifically enforced by either party. Donahoe v. Franks, supra.

[3] The appellant was at liberty to waive his right to specific performance, and accept the forfeit as compensation for the breach of the contract, but he could not by doing so deprive appellee of the commission which he had earned.

For the reasons stated, the judgment of the trial court is affirmed.

Affirmed.

### On Motion for Rehearing.

It was not without hesitancy that we arrived at the conclusion stated in our opinion herein. It is evident that we have decided according to the justice of the case. The decisions of the Courts of Civil Appeals cited seem to us to be at variance with the decisions of our Supreme Court. Having held differently from what was held by the Courts of Civil Appeals in the cases cited, the appellant may, if he sees proper, obtain a writ of error herein, and have the issue here involved definitely settled by the Supreme Court.

Motion for rehearing overruled.