Pat KIRKLAND, Appellant,

v.

Robert C. GASTON, Appellee.

No. 19017.

Court of Civil Appeals of Texas, Dallas.

Nov. 4, 1976.

Rehearing Denied Dec. 2, 1976.

Tom L. Larimore, Walker, Bishop & Larimore, Fort Worth, for appellant.

Robert B. Maloney, Dallas, for appellee.

GUITTARD, Justice.

Appellant Pat Kirkland appeals from a judgment for appellee Robert C. Gaston on a written contract for a finder's fee. Appellant contends that Gaston did not perform all the acts required to entitle him to payment under the contract. We hold that the contract provided for alternative performances by Gaston and that judgment was properly rendered on jury findings establishing that he had performed one of the alternatives.

The decision turns on interpretation of the contract. Appellant Pat Kirkland, president of Kirkland Mortgage Corporation, sought to obtain a substantial interest in a savings and loan association to provide funding for the corporation's mortgage loan business. Toward that end, Kirkland sought the assistance of the appellee, Robert C. Gaston. After negotiations, Gaston's attorney drew up the contract, which, after insertion of additional provisions, was signed by both parties. The material provisions of the contract are as follows:

THAT, PAT KIRKLAND of Dallas County, Texas is desirous of being the prime investor and incorporator of a new Texas Savings and Loan Association, to be formed under the Texas Savings and Loan Act, Article 852a, Vernon's Annotated Civil Statutes.

THAT, PAT KIRKLAND desires the assistance of ROBERT C. GASTON to:

1. Determine the feasibility of a new Texas Savings and Loan Association;

2. Determine the proper location, if any, of a new Texas Savings and Loan Association within a one hundred mile radius of Dallas County, Texas or Tarrant County, Texas;

3. Determine the possibility of purchasing a substantial interest in an existing Savings and Loan Association;

4. For ROBERT C. GASTON, with the approval of PAT KIRKLAND, to enlist the services of attorneys, realtors, economists, or others to prepare a charter, and complete requirements of the Texas Savings and Loan Act, Article 852a, Vernon's Annotated Civil Statutes.

THAT, for such services rendered by ROBERT C. GASTON, PAT KIRKLAND agrees to pay all reasonable expenses incurred by ROBERT C. GASTON in performing above listed services; said expenses to include, but not limited to, automobile and travel expenses, and entertainment expenses.

THAT, PAT KIRKLAND agrees to pay in full, and to issue to ROBERT C. GASTON 10% of the total outstanding Reserve Stock issued before and within ninety days after the granting of the Charter to operate a Texas Savings and Loan Association. The stock shall be issued to ROBERT C. GASTON within four months from the date of incorporation.

THAT, should the charter be rejected by the Commissioner, then the obligation of PAT KIRKLAND shall be for the reasonable expenses incurred by ROBERT C. GASTON, as set out heretofore.

THAT, should an established or operating Savings and Loan Association be secured through the above outlined assistance of ROBERT C. GASTON, or should reserve stock in an established or newly chartered Savings and Loan Association be secured by PAT KIRKLAND, the Kirkland family or interests, PAT KIRKLAND agrees to pay to ROBERT C. GASTON 5% of the total outstanding reserve stock acquired by Pat Kirkland, The Kirkland family, The Kirkland Corporation or Kirkland interests.

THAT, the performance of all parties of any act shall be within a reasonable time, but shall automatically terminate eighteen months after the date this agreement is signed.

Although the consideration to be paid to Gaston for his services is stated as percentages of stock, the parties agree that the

intent was that Gaston should be paid in cash the value of the stipulated percentage of the stock at the time it was issued to Kirkland.

Four months after the execution of the agreement, Gaston advised Kirkland that a charter application for Town East Savings and Loan Association was pending with the Texas Savings and Loan Commissioner and that the Town East group was looking for investors. Gaston suggested that Kirkland contact the attorney for the group to explore the possibility of investment. Following this advice, Kirkland negotiated with the group and contracted to purchase subscription rights to forty thousand shares in the association, constituting forty percent of the initial stock issue, for $400,000. The Town East charter was conditionally granted by the Savings and Loan Commissioner, subject to insurance by the Federal Savings and Loan Insurance Corporation. Kirkland and his father were elected to the board of directors, and his father was designated as chairman.

According to Kirkland's testimony, the F.S.L.I.C. conditioned issuance of its insurance on compliance with the requirements that no one person or family could own more than twenty percent of the savings and loan stock, that only one-third of the members of the board of directors could be engaged in the real estate or mortgage banking business, and that the stock be held in escrow for five years. The restriction on stock ownership barred Kirkland and his family from owning more than twenty percent of the stock if the charter was finally to be granted, and the restriction of the number of directors in the mortgage banking business prompted the board of directors to remove Kirkland and his father from the board. Kirkland found this arrangement unsatisfactory and he sold his subscription rights. The transaction produced $130,000 profit.

Gaston requested that Kirkland pay him $20,000 as his five-percent finder's fee under the provision concerning services leading to securing stock in a newly-chartered savings and loan. Kirkland refused to pay

any amount. Gaston then filed this suit for the amount he claimed he was owed under the contract. After trial before a jury and a verdict in Gaston's favor, the court awarded judgment to Gaston for the amount claimed.

■ All of appellant's points of error are based on his construction of the contract. He construes it as requiring appellee to perform all the acts enumerated before he is entitled to any compensation. Thus, appellant argues, appellee must prove not only that he determined the possibility of purchasing a substantial interest in an existing savings and loan association, but that he also determined the feasibility of a new association and its proper location. In our opinion, the contract is not subject to this interpretation. The following provision, in our opinion, is not dependent on any services with respect to the organizing and chartering of an entirely new association:

THAT, should an established or operating Savings and Loan Association be secured through the above outlined assistance of ROBERT C. GASTON, or should reserve stock in an established or newly chartered Savings and Loan Association be secured by PAT KIRKLAND, the Kirkland family or interests, PAT KIRKLAND agrees to pay to ROBERT C. GASTON 5% of the total outstanding reserve stock acquired by Pat Kirkland, The Kirkland family, The Kirkland Corporation or Kirkland interests.

The contract imposes no obligation on Gaston except as a condition of his right to compensation. Kirkland's obligation to pay may arise from either of two alternatives: (1) if Gaston renders services resulting in the granting of a charter to Kirkland and his family for a new savings and loan association, Kirkland agrees to pay Gaston the value of ten percent of the outstanding stock of that association; and (2) as provided in the paragraph above quoted, if Gaston's services result in securing for Kirkland and his family an interest in a newly-chartered or existing association, Kirkland agrees to pay five percent of the value of the stock purchased. If Gaston performs

either or both of these services, but Kirkland decides not to invest in the opportunities so developed, Kirkland agrees to pay Gaston's reasonable expenses. Thus Gaston's performance of either alternative will give rise to Kirkland's obligation at least to pay Gaston's expenses, and upon Kirkland's acceptance of Gaston's performance by investing in any of the opportunities developed by Gaston, then to pay compensation according to the percentage agreed on. If Kirkland invests in any of the opportunities developed by Gaston, that act satisfies the condition precedent to Kirkland's obligation to pay Gaston in the specified measure, depending upon which services are rendered by Gaston and which services are accepted by Kirkland.

The jury found that Gaston did determine the possibility of purchasing a substantial interest in an existing savings and loan association, and that, as a result of Gaston's efforts, Kirkland and his family secured shares of stock in the amount of $400,000. These findings are not attacked as unsupported by evidence in any of the points presented on this appeal, which assert only that the evidence fails to establish that plaintiff performed "all the acts required under their agreement." This contention is apparently based on appellant's *construction of the contract*, which we reject for the reasons given above. Accordingly, we take these findings as establishing that Gaston performed the second alternative provided in the contract, and, therefore, that he is entitled to the compensation which the contract provides for that performance.

This holding is in accordance with the rule that where a contract provides for alternative performances, if either alternative has been performed, it is no defense to the obligation of counter-performance that the promisor did not also perform the other alternative. *See Moss & Raley v. Wren*, 102 Tex. 567, 120 S.W. 847 (1909); *Carter v. Smith*, 184 S.W. 244, 245–46 (Tex.Civ.App. —Dallas 1916, writ ref'd); *Simpson v. Eardley*, 137 S.W. 378, 380 (Tex.Civ.App.—San Antonio 1911, writ ref'd).

Accordingly, the judgment of the trial court is affirmed.