GEORGE KOCH

*v.*

HENRY STREUTER.

*Opinion filed December 20, 1905.*

1. SPECIFIC PERFORMANCE—*fact that contract provides for forfeiture as liquidated damages does not defeat specific performance.* If the provision for the forfeiture of a certain sum as liquidated damages in case of breach of a contract for the exchange of land is intended merely to secure the performance of the contract and not as offering an alternative course of action either to perform or pay damages, such provision does not oust a court of equity of jurisdiction to decree specific performance.

2. SAME—*bill to reform contract need not allege that mistake was mutual.* A bill to reform and specifically enforce a contract, which shows wherein the alleged mistake consists and charges that the same arose from an error or mistake in drawing the contract, is not demurrable because it does not specifically allege that the mistake was mutual, since the allegations are broad enough to permit proof of that fact, which is an essential element of the right to have the contract reformed.

3. SAME—*when a description of land is prima facie sufficient.* A description of one of the tracts of land in a contract for an exchange of properties as "a certain fruit farm known as the 'Ideal Fruit Farm' and containing about 199½ acres, situated about one and a quarter miles north-west of West Salem, Edwards county, Illinois," is *prima facie* sufficient to sustain a bill for specific performance of the contract.

APPEAL from the Circuit Court of Morgan county; the Hon. O. P. THOMPSON, Judge, presiding.

This is a bill, filed by the appellant against the appellee to reform a contract for the sale or exchange of certain lands, and for a specific performance of the contract when so reformed. The appellee here, defendant below, demurred to the bill. The demurrer was sustained, and the appellant, complainant below, elected to stand by his bill. Thereupon a decree or order was entered dismissing the bill. The present appeal is prosecuted from such order or decree of dismissal.

The bill alleges that the appellant was the owner of certain lands in LaSalle county, amounting to 341.98 acres, and being desirous of selling or trading such premises, and the appellee being minded to purchase or trade for the same, appellant and appellee on September 17, 1904, entered into an agreement in writing respecting the sale or trade of the said premises for a certain fruit farm, known as the "Ideal Fruit Farm," owned by the appellee, and containing about 199½ acres, situated about one and a quarter miles north-west of West Salem in Edwards county, Illinois.

By the terms of the contract the appellee was to take the land of appellant subject to a mortgage of $8750.00, which

he was to assume, with interest thereon after March 1, 1905. Appellant agreed also to secure for appellee on or before March 1, 1905, a loan of $8500.00. In case said loan was made, the difference of $250.00 between the amount of the existing mortgage and the new mortgage was to be paid appellant at the execution of the loan. Each of the parties was to furnish an abstract, showing a good and merchantable title to the premises to be conveyed, and each was to convey his respective premises to the other by warranty deed, except that the appellant was to convey to the appellee a piece of land, containing 2.87 acres south of the Illinois river, a portion of the land to be conveyed by him by quit-claim deed. The contract further provided that appellant was to have an opportunity to inspect appellee's property, and was to notify appellee of his satisfaction or rejection of the same on or before September 22, 1904, which, the bill alleges, was done. The contract further provided that, if either party failed to keep or perform the covenants thereof, the party defaulting should forfeit to the other the sum of $1000.00 such sum being the agreed liquidated damages. The contract also provided that the deeds of conveyance should be deposited in escrow, and the sale consummated at the National City Bank of Ottawa, Illinois, on or before March 1, 1905, and that said deeds were to be made and deposited in said bank as soon as the abstracts were accepted, and that, when the sale was consummated, appellee was to pay appellant the sum of $250.00 commission. The bill also alleges that the appellant obtained a new loan for appellee for the sum of $8500.00, as provided in the contract; that the sum of $250.00, as provided therein, has not been paid to appellant; that appellant furnished an abstract of title, showing good and merchantable title to the premises to be conveyed by him, except as to the 2.87 acres lying south of the Illinois river, and as to that appellant was to furnish an abstract, showing such title as he had in said premises, but, by an error in drawing said contract, the same provided that

appellant was to tender to appellee an abstract, showing good and merchantable title in him to all the premises to be conveyed by him to appellee, and that said appellee had failed to tender or furnish to appellant any abstract to the premises owned by him. The bill also alleges that appellant complied with the contract as to making and depositing his deeds in the National City Bank of Ottawa, and that appellant was at the time of filing the bill, and always has been ready and willing to perform his part of the agreement, but that appellee has failed and refused to carry out his part of the same. The prayer of the bill is, that the amount of money, provided in said contract, should be paid appellant by appellee; that the said agreement should be reformed as to the kind of abstract that appellant was to furnish the appellee as to the 2.87 acres, lying south of the Illinois river, and that the appellee should convey his said premises to appellant, and, upon such conveyance, the appellant would convey the premises to appellee, provided in said agreement to be conveyed to him; and there was also a general prayer for relief.

JOHN A. BELLATTI, and WELTY, STERLING & WHITMORE, for appellant:

The fact that a contract stipulates for liquidated damages does not prevent specific performance. *Lyman* v. *Gedney,* 114 Ill. 388; *Barrett* v. *Geisinger,* 179 id. 240; Pomeroy's Eq. Jur. 446; *Daily* v. *Litchfield,* 10 Mich. 29; *Hooker* v. *Pynchon,* 8 Gray, 550; *Dooley* v. *Watson,* 1 id. 414.

Reformation will be decreed although the language used was selected by the parties, if, when given a legal construction, it fails to comply with the intention of the parties. *Kee* v. *Davis,* 137 Cal. 456; *Brown* v. *Ward,* 119 Iowa, 604; *Wood* v. *Newgood,* 94 N. W. Rep. 859.

A court of chancery will always correct any mistake of fact which has occurred in drawing up a paper when a proper case is presented and clearly proved, and then en-

force specific performance of the instrument when so corrected. *Hunter* v. *Bilyeu,* 30 Ill. 228; *Kelly* v. *Trumble,* 74 id. 428; *Schwass* v. *Hershey,* 125 id. 653; *McCornack* v. *Sage,* 87 id. 484.

The description of the appellee's property was sufficient. *Hayes* v. *O'Brien,* 149 Ill. 403; *Guyer* v. *Warren,* 175 id. 328.

WORTHINGTON & REEVE, for appellee:

The basis of the chancery jurisdiction to decree the specific performance of a contract is the supposed impossibility of doing justice to the parties by the award of damages for the breach or the inadequacy of the remedy at law; and when the parties themselves have agreed upon the compensation for the breach, as in the present case, there is no basis left for the jurisdiction of a court of chancery and the parties are left to their remedy at law. 3 Pomeroy's Eq. Jur. sec. 1401; 1 id. sec. 447, note 2; *Kemp* v. *Humphreys,* 13 Ill. 573; *Bodine* v. *Gading,* 21 Pa. St. 50; *Barrett* v. *Geisinger,* 179 Ill. 240; Waterman on Specific Performance, sec. 23; *Gobble* v. *Linder,* 76 Ill. 157.

To justify a decree for the specific performance of a contract for the conveyance of land the contract must show definitely what was contracted for and what the other party agreed to convey. In this case the description of appellee's land is: "A certain fruit farm known as the Ideal Fruit Farm and containing about 199½ acres, situated about one and a quarter miles north-west of West Salem, Edwards county, Illinois," and is too indefinite to be enforced. *Hamilton* v. *Harvey,* 121 Ill. 469; *Rampke* v. *Buehler,* 203 id. 384; *Hughes* v. *Streeter,* 24 id. 647; *Shackleford* v. *Bailey,* 35 id. 387.

In order to justify the reformation of a written instrument on the ground of a mistake, the bill must show and the evidence clearly establish that the mistake was mutual and common to both parties to the instrument. *Kelly* v. *Gal-*

*braith,* 186 Ill. 593; *Purvines* v. *Harrison,* 151 id. 219; Story's Eq. Jur. sec. 155; *Page* v. *Higgins,* 150 Mass. 57; Bispham's Principles of Equity, (6th ed.) sec. 191, and cases cited.

There is no averment in this bill of a mutual mistake, and nothing to show any mistake against which a court of chancery would grant relief. A mistake on one side is not sufficient for correcting or rectifying an agreement. Kerr on Fraud and Mistake, 422; 1 Story's Eq. Jur. sec. 152, *et seq.; Sutherland* v. *Sutherland,* 69 Ill. 481.

Mr. JUSTICE MAGRUDER delivered the opinion of the court:

The only question in this case is, whether the court below properly sustained the demurrer to the bill. The appellee urges three reasons why the bill was demurrable; first, that no specific performance would lie, because the contract provided for liquidated damages in case of failure of either party to perform his part of said contract; and this was the only remedy appellant was entitled to; second, that the appellant was not entitled to have the contract reformed as to the kind of abstract, that was to be furnished as to the 2.87 acres lying south of the Illinois river; and third, that the appellee's land was insufficiently described.

*First*—The written contract between appellant and appellee contained the following provision: "It is further agreed that, if either party hereto fails to keep or perform the covenants hereinabove specified, said party so defaulting shall forfeit to the other the sum of $1000.00, said sum being the agreed liquidated damages." The contention of the appellee upon this branch of the case is that, where the contract itself has assessed the damages, which the party is to pay upon his doing or omitting to do a particular act, which he has covenanted to abstain from or to perform, equity will not interfere either to prevent or to enforce the act in question, or to restrain the recovery of damages. In other words,

the rule is invoked that, when the parties have agreed upon the compensation of the breach, or, what is the same thing in principle, provided the means by which it may be obtained, the necessity of the interference of a court of chancery no longer exists, and the jurisdiction of such court falls to the ground. (*Bodine* v. *Glading*, 21 Pa. St. 50). As a result of this principle, it is said that in this case the appellant has his remedy at law to recover the sum of $1000.00, agreed upon as liquidated damages, and that a court of equity will not entertain this bill for a specific performance.

Whether the rule thus announced applies in the case at bar depends upon the question, whether or not the sum of $1000.00, being the agreed liquidated damages, is a penalty to be regarded as a mere security for the performance of the contract. Where a suit at law is brought on such a contract, as is here under consideration, the question often arises whether the sum to be forfeited is a penalty, or liquidated damages, and whether the party, seeking a recovery, is entitled to the actual damages suffered, or to the damages mentioned in the provision. In a court of chancery, however, the question is whether one certain act shall be done, or whether one of two things shall be done at the election of the party, who is to perform the contract.

Pomeroy in his work on Equity Jurisprudence (vol. 1, sec. 447), says: "Where, however, the parties to an agreement have added a provision for the payment, in case of a breach, of a certain sum, which is truly liquidated damages, and not a penalty—in other words, where the contract stipulates for one of two things in the alternative, the doing of certain acts, or the payment of a certain amount of money in lieu thereof—equity will not interfere to decree a specific performance of the first alternative, but will leave the injured party to his remedy of damages at law."

In *Lyman* v. *Gedney*, 114 Ill. 388, it was contended for the appellant that a certain clause, written in an instrument, whereby each party bound himself to the other in the sum

of $1000.00 liquidated damages, limited the rights of the parties upon a breach of the contract, in equity as well as at law, and that the only remedy was through an action at law for that sum; but this court there said (p. 398): "The mere fact, that a contract stipulates for the payment of liquidated damages, in case of failure to perform, does not prevent a court of equity from decreeing specific performance. (Fry on Specific Performance, sec. 67, *et seq.;* Waterman on Specific Performance, sec. 22; Pomeroy 'on Contracts, sec. 50). It is only where the contract stipulates for one of two things in the alternative,—the performance of certain acts, or the payment of a certain amount of money in lieu thereof,—that equity will not decree a specific performance of the first alternative."

In *Barrett* v. *Geisinger,* 179 Ill. 240, it was held that specific performance of a contract to make a will in a particular manner cannot be enforced, where the contract is in the alternative, either to make the will, or pay a sum of money. And this court there quoted from Fry on Specific Performance, and Waterman on Specific Performance, and from the case of *Lyman* v. *Gedney, supra,* and said that equity will not interfere to enforce specific performance where the agreement, looked at as a whole, gives to the party the option to do the act or pay a certain sum; but it was there held that where one certain act is to be done with a sum annexed, whether by way of penalty or damages, to secure the performance of the act, the fact, that a penal or other like sum is annexed, will not prevent the court from enforcing the performance of the very act, and thus carrying into execution the intention of the parties. In other words, where the sum annexed, whether by way of penalty or damages, is so annexed for the purpose of securing the performance of the contract, equity will decree a specific performance; but where the contract stipulates for one of two things in the alternative, that is, where the party has the right either to perform certain acts, or to pay a certain amount of money

in lieu thereof, then equity will not decree a specific performance of the first alternative.

If these principles be applied to the contract in question, we see no reason why a court of equity will not specifically enforce it. There is nothing in the terms of the contract, which indicates that either party has the option or election to do the things, provided for in the contract, or to pay the sum of $1000.00 as liquidated damages. The contract provides that the appellee agrees to sell and convey by warranty deed a farm, and the appellant, in consideration thereof, agrees to convey to appellee by warranty deed 341.98 acres. The land to be conveyed by appellant was subject to a mortgage, and there are certain provisions in relation to the assumption of this mortgage, and the execution of another mortgage upon the property. By the terms of the contract each party is to pay the respective taxes and assessments, which were then liens for the year 1904 upon the farm and the 341.98 acres. By the terms of the agreement each party was to tender to the other an abstract of title, and appellant was to have the right to examine the premises, and notify appellee whether they were satisfactory or not. It was also agreed that the conveyances should be made at any time not later than March 1, 1905. By the terms of the agreement, also, the deeds were to be deposited in escrow on or before March 1, 1905, in a certain bank in Ottawa, Illinois, and the bank was to deliver the deeds to the grantees upon the performance of the covenants contained in the contract, and appellee was to pay appellant the sum of $250.00 commissions. We have thus referred to the main provisions of the contract for the purpose of showing, that the provision in regard to the forfeiture of $1000.00, as agreed liquidated damages, was merely a security for the performance of the contract, and that there is nothing in the terms of the contract to justify the conclusion that either party had a right to perform the contract, or, in lieu thereof, to pay the sum of $1000.00. As the contract, therefore, is not alternative in its nature, a

court of equity is not ousted of its jurisdiction to decree a specific performance by reason of the provision, contained in the contract, in reference to the forfeiture of $1000.00 as agreed liquidated damages.

*Second*—The contract provides that "each party shall tender the other an abstract, or abstracts, showing good and merchantable title to the premises, conveyed by said party." It is alleged in the bill that the agreement between the parties was that appellant was to furnish appellee with an abstract, showing good and merchantable title to all of the 341.98 acres to be conveyed by appellant, except 2.87 acres south of the Illinois river, as to which appellant was only to furnish an abstract, showing such title as he had to such 2.87 acres. The bill seeks to reform the contract, so as to show that good and merchantable title was only to be shown to the land to be conveyed, except the 2.87 acres in question, and not as to the latter. The allegation of the bill is, in substance, that the provisions of the contract, requiring an abstract showing good and merchantable title to all of the 341.98 acres, was a mistake. It is insisted by the appellee that the bill was demurrable, so far as its allegations relate to this subject, because the bill does not allege that the misstatement of the contract was the result of mutual mistake.

The allegation of the bill in relation to this matter is as follows: "And the complainant was to furnish to the said Henry Streuter an abstract or abstracts, showing good and merchantable title to the said premises in him, said George Koch, except as to the land south of the Illinois river in the south-west quarter of said section 22, containing 2.87 acres and as to the said 2.87 acres complainant was to furnish an abstract, showing such title as the complainant had in and to said premises, but, by an error in drawing said contract, the same provided that the complainant was to tender the said Henry Streuter an abstract, showing good and merchantable title in him to all the premises to be conveyed by him to the said Henry Streuter. Complainant alleges that

he has furnished such abstract, as required by said contract, to the said Henry Streuter for his examination," etc. The bill thus, in substance, states that there was an error or mistake in the drawing of the contract as to what land should be shown by the abstract to have a good and merchantable title. It is true, as contended by counsel for appellee, that a contract can only be reformed on the ground of mistake when such mistake is mutual. We have held that, to justify the reformation of a written instrument upon the ground of mistake, three things are necessary: First, that the mistake should be one of fact, and not of law; second, that the mistake should be proved by clear and convincing evidence; and third, that the mistake should be mutual, and common to both parties to the instrument. (*Kelly* v. *Galbraith,* 186 Ill. 593, and cases there referred to.) Where such a mistake, as is above indicated, exists, a court of chancery will first reform the contract, and after its reformation decree a specific performance. (*Hunter* v. *Bilyeu,* 30 Ill. 228.) In *Kelly* v. *Trumble,* 74 Ill. 428, this court said: "Where mistake in the execution of an instrument is charged, parol evidence may be resorted to for the purpose of proving what was the real contract of the parties, and a court of equity may reform a contract according to the evidence of the intention of the parties, and decree its specific performance at the same time." But while it is true that the mistake must be mutual and common to both parties to the instrument, (*Sutherland* v. *Sutherland,* 69 Ill. 481,) we have been referred to no authority, which holds that, in such cases, the bill must allege that the mistake was mutual and common to both parties. If the bill alleges that there was a mistake, the word "mistake" is broad enough to include a mistake, which is mutual and common to both parties. We see no reason why, under an allegation that there was a mistake, proof could not be introduced that the mistake was mutual. In the case at bar, the bill does charge, in substance, that there was a mistake or error in drawing the

contract; and we are of the opinion that the bill is not demurrable, because it did not go further and allege that the mistake was mutual. Of course, if the proof, introduced by the complainant in the bill alleging such a mistake, does not show it to have been mutual and common to both parties, the court would be justified in refusing a reformation of the contract and a specific performance of it. But the allegation in the bill upon this subject, as above quoted, is sufficient, and does not justify the holding that the bill was demurrable on that account.

*Third*—It is furthermore charged on the part of the appellee that the description of the property, to be conveyed by the appellee in the contract, is so uncertain and indefinite that specific performance of it cannot be enforced. The property to be conveyed by appellee is described in the contract as follows: "A certain fruit farm known as the 'Ideal Fruit Farm' and containing about 199½ acres, situated about one and a quarter miles north-west of West Salem, Edwards county, Illinois."

It has been said that "a deed or other written contract is not void for uncertainty in the description of the land sold or conveyed, if, from the words employed, the description can be made certain by extrinsic evidence of facts, physical conditions, measurements or monuments, referred to in the deed." (*Hayes* v. *O'Brien*, 149 Ill. 403). In *Hamilton* v. *Harvey*, 121 Ill. 469, it was said that a certain description of five acres of land was indefinite and uncertain, and the following language was there used: "It is not stated that they are owned by Harvey, the vendor. Their direction from the 'works,' whether north, south, east or west, is not indicated." In *Guyer* v. *Warren*, 175 Ill. 328, the description was "our farm in LeClaire's reserve, Rock Island county, and consisting of 83.31 acres, more or less;" and we there said: "The word 'our' indicates that the farm referred to was a farm owned by the vendors in the contract. The balance of the description showed that the farm was located in LeClaire's

reserve in Rock Island county. It can be shown with certainty what lands the appellees owned within the reserve and county named. The maxim is: *id certum est quod certum reddi potest."* It is not stated in express words that the "Ideal Fruit Farm" to be conveyed by the appellee was owned by the appellee, but there is the following provision in the written contract, to-wit: "It is further agreed that each party to this agreement pays the taxes and assessments now a lien upon their respective premises for the year 1904." The words, "their respective premises," refer back to the "Ideal Fruit Farm" of appellee, and to the 341.98 acres of appellant. This provision in the contract is substantially a statement that the premises to be conveyed by the parties belong to them respectively. The "Ideal Fruit Farm" is spoken of as appellee's premises, which can mean nothing else than the premises owned by appellee, as, by the terms of the contract, appellee agreed to convey the fruit farm, and to execute a deed for it. It is stated that the fruit farm is known as the "Ideal Fruit Farm." The number of acres is stated as 199½. The direction of the fruit farm from West Salem is stated, and also its distance from West Salem. From this description the fruit farm could be easily identified, and it could be shown with certainty what land was intended to be described in the contract. From the words used the description of the land can be made certain. The bill avers that, under the contract, appellant had the privilege of examining the fruit farm to be conveyed by appellee, and that he did examine the same, and that the farm was satisfactory to him, and that he notified appellee of his satisfaction therewith. The bill thus substantially alleges that the description was sufficiently definite to enable appellant to find the farm, and examine it to his satisfaction. The demurrer to the bill admits this allegation to be true. For this reason, we are of the opinion that the bill is not demurrable because of uncertainty and indefiniteness in the description of the land.

We have thus considered the three grounds upon which the appellee charges that the bill was justly subject to demurrer, and we are of the opinion that the bill is not defective for any of the reasons stated.

Accordingly, the decree of the circuit court, sustaining the demurrer to the bill and dismissing it for want of equity, is reversed, and the cause is remanded to that court for further proceedings in accordance with the views herein expressed.

*Reversed and remanded.*