65 So.2d 185

### McGUIRE et al. v. ANDRE.

### 8 Div. 668.

Supreme Court of Alabama.

March 26, 1953.

Rehearing Denied May 28, 1953.

Bradshaw, Barnett & Haltom, Florence, for appellants.

Mitchell & Poellnitz, Florence, and Mc-Afee Lee, Knoxville, Tenn., for appellee.

STAKELY, Justice.

The pivotal question in this case is whether a written contract which is designated in the record as Exhibit G is a contract for the sale and purchase of real estate or is an option for the purchase of real estate. As will appear, if the contract is one for the sale and purchase of real estate, then the principle of equitable conversion will consider the real estate as personal property, when it is sold, subject to the laws of descent and distribution of the

State of Kentucky. If on the other hand the contract is an option, then the lands embraced in the contract remain real property under the laws of the State of Alabama and subject to the laws of descent and distribution of real property in the State of Alabama. The instrument which we have referred to as Exhibit G will appear in the report of the case.

On December 16, 1949, C. McGuire died intestate in Maysville, Kentucky. He was an inhabitant and resident of that city and state. He left· surviving him his widow Lisa Lee McGuire and a sister Cora Andre, who is legally incompetent. Charles Andre, Jr., appellee, is her legally appointed guardian. The decedent had no children or their descendants, no father and mother living at the time of his death and no brothers and sisters, except Cora Andre, and no descendants of any brothers and sisters.

On and prior to December 16, 1949, C. McGuire owned in fee simple certain real estate situated in Lauderdale County, Alabama, in a subdivision known as Edgemont No. Two. This property ·will be referred to as the Edgemont property. At the time of his execution of the instrument to which we will refer, he had a good and merchantable title to the property.

On the morning of December 16, 1949, R. W. Drane, a Real Estate Agent from Florrence, Alabama, presented to C. McGuire a certain written instrument, which we have referred 'to and identified as Exhibit G, prepared by an attorney of Tuscumbia, Alabama, for Southern Sash Sales & Supply Company, Inc., an Alabama corporation. This instrument had been executed a day previously in Florence, Alabama, by Southern Sash Sales and Supply Co., Inc., through its president and attested by its secretary. C. McGuire and his wife signed and acknowledged the written instrument on the morning of December 16, 1949, and delivered the same to R W. Drane immediately thereafter in Maysville, Kentucky, for delivery to the Southern Sash Sales & Supply Co., Inc. At the time of the delivery of the aforesaid written instrument to R. W. Drane, as recited in the instrument, C. McGuire received from Drane on behalf of Southern Sash Sales & Supply Co., Inc.,

the sum of $10 in cash and a check for $1,000 drawn by Southern Sash Sales & Supply Co., Inc., on the First National Bank of Tuscumbia, Alabama, dated December 14, 1949, payable to the order of D. C. McGuire with the notation on the face thereof, "earnest payment of property and part of purchase price of same." C. McGuire endorsed and deposited the check in the State National Bank of Maysville, Kentucky, on December 16, 1949, and the check was paid through normal banking channels on December 22, 1949. Subsequent to December 16, 1949, an abstract of · title to the Edgemont property was prepared and furnished to the attorney of Southern Sash Sales & Supply Co., who approved the title.

Upon the death of C. McGuire, which occurred unexpectedly on the afternoon of December 16, 1949, ancillary letters of administration on his estate were granted to J. L. Jaynes by the Probate Court of Lauderdale County, Alabama, on March ·16, 1950, and on April 6, 1950, Southern Sash Sales and Supply Company paid to Jaynes, as ancillary administrator, the sum of $5,-000 in cash and delivered to him its promissory notes totaling $7,000, payable to him as administrator, in the manner as was agreed in the written instrument of December 16, 1949, designated as Exhibit G, and further delivered a properly executed first mortgage to Jaynes, as administrator, securing the aforesaid notes on the Edgemont property.

On April 7, 1951, Southern Sash Sales & Supply Co. paid to J. L. Jaynes, as administrator· of the estate of C. McGuire, de- ·ceased, the sum of $7,315, representing payment in full of the balance of the purchase price of the Edgemont property and of the aforesaid mortgage indebtedness, plus accrued interest. The administrator thereupon duly satisfied the record of the mortgage. It was agreed that Jaynes in his capacity as ancillary administrator has received the sum of $12,315 cash as the balance of the purchase price of the Edge-mont property. Subsequent to the death of C. McGuire, J. L. Jaynes, the ancillary administrator, pursuant to § 36, Title 47, Code of 1940, conveyed the real estate according

to the contract designated as Exhibit G to Southern Sash Sales and Supply Company, Inc.

A certified and authenticated copy of the statutes of descent and distribution of the State of Kentucky was introduced in evidence by stipulation of counsel.

On June 22, 1951, J. L. Jaynes, as administrator of the estate of C. McGuire, deceased, filed in the Probate Court of Lauderdale County a petition with an exhibit and accounting for final settlement of the administration. In this petition the instrument which has been designated as Exhibit G is described by the petitioner as a written contract of sale and a copy is attached to the petition. The petition described the heirs and distributees of the estate of C. McGuire as being the widow Lisa Lee McGuire over the age of twenty-one and residing in Maysville, Kentucky, and Cora Andre, a sister of decedent over the age of twenty-one years, a non compos mentis, her duly and legally appointed guardian being her son Charles Andre, Jr., who resides in Knoxville, Tennessee.

On December 21, 1951, a decree was entered by the Probate Court of Lauderdale County in which, in substance, the administrator was directed to divide and pay the proceeds in his hands from the sale of the Lauderdale County property equally to the widow Lisa Lee McGuire and to Charles Andre, Jr., as guardian of the decedent's incompetent sister, Cora Andre. From the decree of the probate court on December 21, 1951, an appeal was taken by Charles Andre, Jr., as guardian of Cora Andre, a non compos mentis, to the Circuit Court of Lauderdale County pursuant to the provisions of §§ 775 and 776, Title 7, Code of 1940. On appeal the decree of the probate court was held to be in error in the matter to which we have referred and the circuit court rendered a decree to the effect that the sum of $12,315 received by J. L. Jaynes, as ancillary administrator of the estate of C. McGuire, from Southern Sash Sales & Supply Co., Inc., should not be held, considered and distributed under the applicable laws of descent and distribution of the State of Kentucky as personal property of the estate of the decedent, that there was no equitable conversion of the real estate into personal property, but that at the time of the death of C. McGuire the lands descended as real estate and that Cora Andre, as sole heir, is entitled to the whole of the distribution of the unpaid purchase price received by the ancillary administrator after the death of C. McGuire. The appeal comes here from the decree of the circuit court.

As we have stated and as we shall later show, it is necessary for a disposition of this case to determine whether the contract which has been designated as Exhibit G is a contract of purchase and sale or an option. There is a difference between a contract to purchase and sell real estate and an option to purchase, the distinction being that the contract to purchase and sell creates a mutual obligation on the one party to sell and on the other to purchase, whereas an option merely gives the right to purchase within a limited time without imposing any obligation to purchase. In a contract in which a party is bound absolutely to purchase and the other party to sell, there is no option, but the agreement is one to purchase and sell. So, where a party binds himself unconditionally to buy at a purchase price, the contract is for that reason often held to be a contract to purchase. On the other hand, the distinguishing feature of an option contract is that it imposes no binding obligation upon the person holding the option. Furthermore unless the contract contains language which may reasonably be construed as an agreement on the part of the vendee to purchase the property or to assume some obligation thereunder, it is an option contract and not an agreement of sale and purchase. 55 Am.Jur. § 29, pp. 996–997.

Furthermore it should be pointed out that an option to purchase is a contract in which the owner of property agrees with another person that the latter shall have the right to buy the property from the former at a fixed price within a certain time. In such a contract two elements exist, first, the offer to sell which does not become a contract until accepted and, second, the completed contract to leave the offer open for a specified time. It is a unilateral exe-

cuted contract, binding only upon the optioner and not on the optionee. It becomes a contract between the parties only when exercised or accepted according to its terms. Obviously if the contract is binding on both parties it cannot be an option. 66 C.J. pp. 485–486; Lauderdale Power Co. v. Perry, 202 Ala. 394, 80 So. 476; Bethea v. McCullough, 195 Ala. 480, 70 So. 680; Fullenwider v. Rowan, 136 Ala. 287, 34 So. 975. It becomes necessary to examine the contract designated as Exhibit G to determine from an examination of the entire contract the intention of the parties under the terms of the contract. 66 C.J. p. 490.

■ There is some difficulty in the matter, but there are certain features of the situation which should be carefully considered. It will be noted that in the acknowledgments to the contract, the contract is labeled "option." However it is settled that the nature of a contract is to be determined by the terms and conditions of the contract itself and not by the name given to it. It is not a question of what the parties call a contract, but what they put in the contract, because the law regards substance and not form. Suburban Imp. Co. v. Scott Lumber Co., 4 Cir., 59 F.2d 711, 87 A.L.R. 555; 3 A.L.R. p. 576; D. M. Ferry & Co. v. Hall, 188 Ala. 178, 66 So. 104, L.R.A.1917B, 620; Wolfle v. Daugherty, 103 Fla. 432, 137 So. 717.

■ It is insisted, however, by the appellee that the present contract is only an option contract because there is no specific agreement in the contract obligating the Southern Sash Sales & Supply Co., Inc., to purchase the property described therein. This undoubtedly creates a difficulty. There is strong authority for the holding, however, that the fact that the contract does not formally bind the party to make payment, is not regarded as conclusive of its character. In other words there need be no express agreement that the purchaser has agreed to buy, but where it appears from the contract that the intent was to consummate a sale, the absence of an express agreement to purchase does not limit the contract merely to one of option, but it will be held to be a contract of purchase and sale. 55 Am.Jur. § 30, pp. 500–

501; Rafael Gutierrez Del Arroyo v. Graham, 227 U.S. 181, 33 S.Ct. 248, 57 L.Ed. 472; Asia Investment Co. v. Levin, 118 Wash. 620, 204 P. 808, 32 A.L.R. 578. It seems to us that a careful consideration of the terms of the contract shows the contract to be one of purchase and sale and not an option. For instance, there is no time limit prescribed or stated in the contract in which an option is to be exercised and as we have shown by authorities cited, this is one of the essentials of an option. Furthermore it will be noted that the contract is also signed by Southern Sash Sales & Supply Company, Inc. We do not mean to say that the mere execution of the contract by Southern Sash Sales & Supply Company, Inc., makes the instrument a bilateral contract, but it is certainly an indication that both parties intended to be bound by the terms and conditions of the contract. In fact the Supreme Court of the United States in a case before it laid stress upon the fact that an instrument that had been signed by both parties was a contract of purchase and sale rather than an option. Rafael Gutierrez Del Arroyo v. Graham, supra. In the case here mentioned the court looked closely to the language used by the parties, 3 A.L.R. p. 577. In the case at bar the contract recites a cash payment at the time of the execution of the contract of $1,000 as earnest money, with a provision that this amount would be credited on the down payment of $6,000 in the event the transaction is closed. It will be recalled that there is provision in the instrument for repayment of the $1,000 earnest money in the event the title to the property is found to be unacceptable to the attorney of the party of the second part. In other words, a substantial amount was paid on the execution of the contract and this amount which aggregated $1,000 is designated as earnest money. A deposit of part payment on the purchase price of property on sale to be consummated in the future is "earnest money." 14 Words and Phrases, Earnest Money. See also Vance v. Roberts, 96 Fla. 379, 118 So. 205.

Other expressions in the contract tend to show it to be a contract of purchase and sale as for example the following provi-

sion: "If an examination of the abstract reveals that parties of the first part can convey fee simple title and party of the second part fails to purchase, then in that event party of the second part shall forfeit the $1,000.00 earnest money and the $1,000.00 earnest money shall be retained by parties of the first part."

In the case of Wolfle v. Daugherty, 103 Fla. 432, 137 So. 717, 719, the contract was somewhat similar to the one in the case at bar. The defense in substance was that the contract was a mere option to buy and if the vendor was liable for a return of the initial payment, the vendee's remedy was by an action at law to recover. The Florida Court said:

"But the contract in this case, though called an option, is more than a mere option to buy given to the vendee for a consideration. It contains terms that are appropriate to a contract of sale and was accepted and acted on by the vendee."

In the foregoing case the contract provides that if the sale and purchase are accomplished, the initial payment of $1,000 shall become a part of the purchase money.

It is argued by the appellee that the provision in the agreement designated Exhibit G to the effect that, if an examination of the abstract reveals that parties of the first part could convey fee-simple title and party of the second part fails to purchase, then in that event party of the second part shall forfeit the $1,000 earnest money and that such sum could be retained by the parties of the first part, is such as would bar specific performance. However this court in the case of Eaton v. Sadler, 215 Ala. 161, 110 So. 10, 12, said:

"The cases hold that it is a question of intention, to be deduced from the whole instrument and the circumstances; and, if it appears that the performance of the covenant was intended, and not merely the payment of damages in case of a breach, the covenant will be enforced. McCurry v. Gibson, supra, 108 Ala. [451] 459, 18 So. 806. 'In other words, where the sum annexed, * * * is so annexed for the purpose of securing the performance of the contract, equity will decree a specific performance; but where the contract stipulates for one of two things in the alternative, that is, where the party has the right either to perform certain acts, or to pay a certain amount of money in lieu thereof, then equity will not decree a specific performance of the first alternative.' Koch v. Streuter, 218 Ill. 546, 75 N.E. 1049, 2 L.R.A.,N.S., 210. But, as observed in McCurry v. Gibson, supra, 108 Ala. 451, 459, 18 So. 806, 809 (54 Am.St.Rep. 177), 'all that is settled by the insertion of a simple agreement to pay liquidated damages is that, if an action is brought for damages, the recovery shall be for the amount named, neither more nor less.' "

■ Looking to all the terms of the contract to determine the nature and character of the contract, we conclude that the contract was a contract of sale and purchase and not merely an option to purchase.

■ Since we have concluded that the contract designated as Exhibit G is a contract of sale and purchase, it now becomes necessary to show the result of such determination. The contract of sale and purchase was executed on the morning of December 16, 1949. On the same day in the afternoon C. McGuire, the owner of the property, died suddenly and unexpectedly. He left no will. And so the problem is presented as to whether the lands involved in the contract will be regarded as real estate or as personal property. In the case of Flomerfelt v. Siglin, 155 Ala. 633, 47 So. 106, 107, 130 Am.St.Rep. 67, this court in discussing the question of equitable conversion refers to Pomeroy on Equity Jurisprudence and among other things said:

"'The whole scope and meaning of the fundamental principle underlying the doctrine are involved in the existence of a duty resting upon the trustees or other parties to do the specified act; for, unless the equitable "ought" exist, there is no room for the operation of the maxim "equity regards that as done which ought to be done." '"

The court goes on to show that in order for the rule to work a conversion while the property is yet actually unchanged in form, there must be a clear and imperative direction in the contract made by the parties while living to convert the property, that is, to sell the land for money. However, if by the express language or by reasonable construction of all its terms the instrument shows an intention that the original form of the property shall be changed, then a conversion necessarily takes place and so a contract of sale, if all the terms are agreed upon, operates as a conversion of the property. The vendor becomes a trustee of the estate of the purchaser and the purchaser a trustee of the purchase money for the vendor. Furthermore in the opinion it is said in substance that in case of the vendor's death, where he is under contract to sell lands, the heir receives the title in trust for the vendee and must convey upon payment of the purchase money, but the purchase money goes not to the heir but to the personal representative of the vendor, because the vendor's interest has been converted by the contract from realty to personalty. See also Brown v. Olsson, 254 Ala. 695, 49 So.2d 564; 18 C.J.S., Conversion, §§ 1, 7, 8; 19 Am.Jur. § 15, p. 15.

Where the property passes by reason of a contract, it is generally held that the conversion takes place as of the time of the execution of the contract. The change from realty to personalty is regarded as complete when the sale is ratified and the purchaser has complied with its terms by paying the purchase price. 19 Am.Jur. § 28, p. 23; 19 Am.Jur. § 15, p. 15.

Since we hold that the principle of equitable conversion is applicable it becomes necessary to distribute the purchase money under the statutes of descent and distribution of the laws of Kentucky, where the deceased, C. McGuire, was a resident at the time of his death. Under these statutes, which were introduced in evidence, where the deceased dies intestate one-half of the personal property goes to the widow, Lisa Lee McGuire, and one-half to Cora Andre, the sister of the deceased. The share of the latter of course, will be paid

to Charles Andre, Jr., her legally appointed guardian. Since the lower court held that Cora Andre was entitled to the entire proceeds of the sale on the theory that equitable conversion did not apply, the judgment of the lower court determining the final accounting of the ancillary administrator is reversed and rendered, so that one-half of the sum of $12,315 in the hands of the ancillary administrator received by him from a sale to the Southern Sash Sales & Supply Company, Inc., of the lands in Lauderdale County will go to the widow Lisa Lee McGuire and one-half to Charles Andre, Jr., as guardian of the incompetent sister Cora Andre. Obviously no change is to be made in other features of the decree, which are not attacked on this appeal.

Affirmed in part and in part reversed and rendered.

LAWSON, GOODWYN and MERRILL, JJ., concur.