In July 1983, Lewis M. Stewart entered into an agreement with George and Louise Robertson wherein Stewart was given the exclusive right to list for sale approximately three thousand acres of land owned by the Robertsons. This contract was in writing and had been prepared by Stewart. A provision in this listing contract provided:
 "3. In Consideration for selling said real estate, the Landowner agrees to pay the Realtor a commission equal to three percent (3%) of the total selling price. Any earnest money paid by a prospective purchaser shall be divided two-thirds to the Landowner and one-third to the Realtor, with the Realtor's share being applied toward payment of his total commission due at closing. However, under no circumstances shall the Realtor receive a share of the earnest money in an amount greater than his commission would have been had the sale been completed."
A short time later, Stewart showed the property to another real estate broker, William K. Nicrosi. Thereafter, with Stewart present, Nicrosi and the Robertsons entered into an option agreement which gave Nicrosi or his assigns the option to purchase, within ninety days, approximately 2,963 acres of the Robertsons' land. In consideration for this option to purchase, Nicrosi delivered to the Robertsons a check in the sum of $16,296.50. Regarding this sum, the option agreement provided:
 "2. The Purchaser has contemporaneously herewith paid to the Seller the sum of Sixteen Thousand Two Hundred Ninety Six Dollars and Fifty Cents ($16,296.50), the receipt of which is hereby acknowledged, which said sum shall be retained by the Seller if this Option shall not be exercised or shall be applied on the purchase price if the Option is exercised."
This option contract gave to Nicrosi and his assigns the right to enter upon the land in order to administer tests to determine the exact nature of the land. After the tests were completed, Nicrosi allowed the option to expire. No contract for the sale and purchase of the real estate was executed.
In March 1984, Stewart sent a letter to the Robertsons asking that he be paid a part of the money that had been given as consideration for the option. He argued that this option money was the equivalent of "earnest money" as the term was used in their listing contract. The Robertsons refused this request. Stewart filed suit against them seeking to recover on two counts. The first count sought compensation for work and labor performed; the second alleged a breach of contract. After an ore tenus hearing, the trial court ruled in favor of the Robertsons on both counts. Stewart's motion for a new trial was denied.
On appeal, Stewart's first argument for reversal is that the trial court erred in ruling that the money paid for the option contract was not earnest money under the listing contract.
"Earnest money" consists of a deposit of part payment on the purchase of property on sale to be consummated in the future.McGuire v. Andre, 259 Ala. 109, 65 So.2d 185 (1953). See also
14 Words and Phrases, Earnest Money. As a general rule, this money is subject to forfeiture if the purchaser defaults on the contract. See McGuire, supra; Eaton v. Sadler, 215 Ala. 161,110 So. 10 (1926). See generally Words and Phrases, EarnestMoney.
What the parties refer to as "option money" is that money which was paid by Nicrosi to the Robertsons for the option to purchase their lands. Because the contract provided that this money was to be retained *Page 15 
by the Robertsons if the option to purchase was not exercised, but was to be applied to the purchase price if it was exercised, Stewart argues that the option money served the same purpose as earnest money.
To accept that earnest money and option money are synonymous, one would have to ignore the distinction between a contract for the sale and purchase of land and an option to purchase land.
A purchaser pays earnest money under a contract for the sale and purchase of land in order to show he is in earnest and acting in good faith, see 14 Words and Phrases, Earnest Money.
In an option contract a prospective purchaser is merely buying the "right to purchase" land within a limited time. McGuire,supra. In a contract to purchase and sell, a mutual obligation exists with regard to the land in which one party is obligated to sell and the other to purchase; whereas, in an option to purchase, no binding obligation to purchase exists. Id. Other, more subtle, distinctions also exist. For example, a seller may obtain specific enforcement of a contract for the sale and purchase of land, even though provision has been made in the contract for liquidated damages in the form of forfeited earnest money. Eaton v. Sadler, supra. No such specifically enforceable contract exists with an option to purchase until the option has been exercised. See McGuire, supra.
Stewart's reliance upon the similarity between earnest money subject to forfeiture under a sale and purchase contract and money given for an option to purchase is misplaced. At least two striking distinctions exist between the two. First, although some element of default must exist on the part of a purchaser before earnest money may be subjected to forfeiture, no such element need be present in order to retain money given for an option to purchase. See Eaton, supra. Second, in an option contract it is the prospective purchaser of land that has the right to decide whether to release the seller from his obligation to sell; whereas, in a contract to sell and purchase, in which earnest money has been given, it is the seller that has the option, upon the buyer's default, of releasing the buyer from his obligation to buy. The default of a purchaser does not ipso facto terminate a contract for the sale and purchase of land and execute a forfeiture of the earnest money. The seller must do some act to indicate his election to consider the contract as ended. The purchaser has no right to take advantage of his own default. Id.
Given these principles we could accept Stewart's argument that the option money is actually earnest money only if the contract entered into by Nicrosi and the Robertsons were actually an executory contract for the sale and purchase of land. All parties agree that such was not the case. No language in the contract may reasonably be construed to obligate Nicrosi to purchase the land. Therefore, we agree with the trial judge that the agreement was an option to purchase. McGuire, supra.
Stewart's second argument is that the trial court erred in denying him compensation for work and labor done, i.e., services rendered to the Robertsons which resulted in the sale of an option to purchase.
Generally, a broker is not entitled to compensation until he has accomplished that which he undertook to do in his contract of employment. 12 Am.Jur.2d Brokers § 182 (1964). In order to determine whether a broker's duties have been performed, reference must be made to the terms of that particular contract. Id.
In order to recover for work and labor, there must exist a contract, express or implied. Water Works and Sanitary SewerBoard v. Norman, 282 Ala. 41, 208 So.2d 788 (1968); Gilbert v.Gwin-McCollum Funeral Home, Inc., 268 Ala. 372, 106 So.2d 646
(1958). Further, one cannot recover under an implied contract when an express contract is in existence, unless it is shown that the express contract has been performed as to all but payment of services, or that the other party has breached the express contract and thus prevented performance. *Page 16 Hendrix, Mohr Yardley, Inc. v. City of Daphne, 359 So.2d 792
(Ala. 1978). See Humphrey v. Boschung, 47 Ala. App. 310,253 So.2d 760 (1970), aff'd, 287 Ala. 600, 253 So.2d 769 (1971).
In this case, an express contract provided that Stewart would be entitled to compensation only upon "any sale or contract of sale." There was no sale. Stewart has neither fully performed, nor has he shown a breach of contract by the Robertsons. He has no right to compensation. City of Daphne, supra. See also
Annot., 32 A.L.R.3d 321 (1970); 12 Am.Jur.2d Brokers § 188 (1964).
The foregoing considered, the judgment of the trial court is affirmed.
AFFIRMED.
BRADLEY and HOLMES, JJ., concur.