CUTTER DEVELOPMENT CORPORATION *v.*
ANGELO PELUSO ET AL.
(13641)

PETERS, C. J., SHEA, GLASS, COVELLO and HULL, Js.

Argued March 30—decision released July 11, 1989

*Jeffrey J. Mirman,* with whom was *Mary-Ellen B. Clark,* for the appellants (defendants).

*Thomas J. Shortell,* with whom, on the brief, were *Karen P. Blado* and *Marjorie J. Berger,* for the appellee (plaintiff).

HULL, J. This appeal arises from a judgment sustaining an action brought by the plaintiff, Cutter Development Corporation, against the defendants, Angelo Peluso, John Peluso and Louis Peluso, claiming that the plaintiff and the defendants had executed "a certain agreement" for the sale of the defendants' property to the plaintiff and seeking, upon the defendants' refusal to convey the property on the date allegedly set for performance, a decree of specific enforcement of the terms of the contract. The defendants contend on appeal, as they did at trial, that they had no obligation to convey the property in question to the plaintiff because: (1) their agreement was merely an option and not a bilateral purchase and sale contract; (2) the plaintiff did not satisfy its burden of proving its entitlement to a decree of specific performance; and (3) the plaintiff did not exercise its option to purchase in timely fashion. After considering the agreement itself, the testimony of the parties regarding their intent, and several letters exchanged between the parties' attorneys at or near the date set for closing, the trial court found that the agreement is "a bilateral contract for the purchase of the defendants' property." The trial court thereupon granted the plaintiff's request for a decree of specific performance of the terms of the agreement, i.e., the conveyance of the property to the plaintiff in exchange for the purchase price specified in the contract.[1] We find no error.

---

[1] In the alternative, the trial court found that even if the agreement could be construed as an option contract, the plaintiff had timely exercised its option to purchase. In view of our disposition of this case, it is unnecessary for us to address this alternative finding of the trial court.

On September 19, 1984, the parties entered into an agreement concerning the sale of a piece of property owned by the defendants on Sheldon Street in Hartford. A review of the contents of the agreement reveals the following relevant terms and provisions. The thirteen page agreement, entitled "Option Agreement," sets forth a $1,000,000 purchase price for the property.[2] Apart from its use in the title, the word "option" appears only once in the body of the agreement. Throughout the agreement, the plaintiff and the defendants are referred to as "Purchaser" and "Seller" respectively. An unnumbered paragraph on the first page of the agreement, purporting to obligate the defendants to sell the property to the plaintiff, reads as follows: "Seller does hereby promise and agree to and with Purchaser that immediately upon the faithful performance of Purchaser's agreement hereinafter made, Seller will on or before the 20th day of September, 1985," convey the property to the plaintiff. The only language expressly purporting to obligate the plaintiff to buy the property appears in the last paragraph (paragraph 20) of the agreement, wherein it states that "[e]xcept as stated above, the Purchaser agrees to purchase the real property comprising the Premises 'as is' and 'where is' as of the date of the execution of this Agreement, reasonable wear and tear excepted." The agreement also provides that the sole remedy of the sellers in the event of a breach by the purchaser is retention of any deposits previously paid by the purchaser: "In the event Purchaser, through no fault of Seller, fails to perform any of the obligations

---

[2] The agreement calls for the following payment schedule: an "initial deposit" of $7500 to be made upon the execution of the agreement; a "second deposit" of $42,500 to be paid on December 19, 1984; a "third deposit" of $25,000 to be paid on March 19, 1985; a "fourth deposit" of $25,000 to be paid on June 3, 1985; a $700,000 promissory note to be executed by the plaintiff at the time of closing; and the balance of the purchase price to be paid by certified check, bank check or cash at the time of closing.

hereinbefore set forth, Purchaser shall forfeit all claims to the Premises described herein, and all deposits previously paid in pursuance of this Agreement prior to said default by the Purchaser shall be construed as full liquidated damages to Seller and Purchaser shall be discharged of any and all liability to Seller under this Agreement."

## I

An option contract and a contract of sale are in fact two separate and distinct contracts, namely, an option contract, and an agreement to sell. "An option, originally, is neither a sale nor an agreement to sell. It is not a contract by which one agrees to sell and the other to buy, but it is only an offer by one to sell within a limited time and a right acquired by the other to accept or reject such offer within such time." 77 Am. Jur. 2d, Vendor and Purchaser § 28; see *Smith* v. *Hevro Realty Corporation,* 199 Conn. 330, 336, 507 A.2d 980 (1986). "The distinction between a contract to purchase and sell real estate and an option to purchase is that the contract to purchase and sell creates a mutual obligation on the one party to sell and on the other to purchase, while an option merely gives the right to purchase within a limited time without imposing any obligation to purchase." 77 Am. Jur. 2d, supra, § 29. Whether the agreement in question is to be construed as a mutually binding contract of purchase and sale or a mere option to purchase is "a question of the intent of the parties, to be determined, as a matter of fact, from the language of the contract, the circumstances attending its negotiation, and the conduct of the parties in relation thereto." *Kakalik* v. *Bernardo,* 184 Conn. 386, 393, 439 A.2d 1016 (1981). As a finding of fact, the trial court's determination that the parties intended to enter into a mutually binding purchase and sale contract "is a determination that we must sustain

unless it was clearly erroneous in light of the evidence and the record as a whole." Id.; see Practice Book § 4061.

The defendants stress three points about the contents of the agreement which they claim establish its nature as an option contract: first, the denomination of the agreement as an "Option Agreement" in its title; second, the alleged lack of an obligation to purchase on the part of the plaintiff; and third, the presence of a liquidated damages clause as the defendants' sole remedy in the event of the plaintiff's breach of the agreement. We are unpersuaded.

The fact that the agreement is entitled "Option Agreement" is not determinative of its character. "Whether the nature of a contract is an option or a bilateral obligation to purchase is to be determined not by the name which the parties have given it, but by the nature of the obligations which it imposes. Where it appears that the general intention of the parties was to consummate a sale, that intention should be effectuated." *Cole* v. *Haynes,* 216 Miss. 485, 496, 62 So. 2d 779 (1953); see *McGuire* v. *Andre,* 259 Ala. 109, 115, 65 So. 2d 185 (1953) (nature of a contract labeled "option" to be determined by the terms of the contract and not by name given to it); *DeFeyter* v. *Riley,* 43 Colo. App. 299, 301, 606 P.2d 453 (1979) (fact that word "option" appears in title does not mandate determination that instrument is an option contract). The trial court was entitled to find, as it did, that the heading of the agreement did not reflect the actual intent of the parties as to the nature of the agreement. This is particularly true where, as here, the word "option" appears only once in the body of the agreement.

The defendants next claim that the agreement lacks a provision obligating the plaintiff to purchase the property and that this establishes its character as an option

contract. It is true that a distinguishing feature of an option contract is that it imposes no binding obligation on the option holder to complete the purchase. See, e.g., *McGuire* v. *Andre,* supra, 114; *State* v. *New Jersey Zinc Co.,* 40 N.J. 560, 576, 193 A.2d 244 (1963); 77 Am. Jur. 2d, supra, § 29. We disagree, however, with the defendants' assertion that the agreement fails to impose an obligation upon the plaintiff to purchase the property. As noted above, paragraph 20 of the agreement expressly provides that "the Purchaser agrees to purchase the real property" of the defendants. This express obligation is unconditional. It is not prefaced by language indicating that purchase of the property by the plaintiff is optional. The defendants have offered no reasons why this explicit language of obligation should not be given its apparent intended effect. Accordingly, we find without merit the defendants' claim that the agreement fails to impose a binding obligation upon the plaintiff to purchase the property.

The defendants also contend that the presence of a forfeiture provision and the specification that it shall be the defendants' sole remedy in the event of a breach by the plaintiff establishes the nature of the agreement as an option contract. In support of their contention the defendants point to three jurisdictions that have adopted a bright line rule stating that where an agreement concerning the sale of real estate provides, as the sole remedy for the seller, a provision for liquidated damages or a provision calling for the forfeiture of sums already paid, the agreement shall be construed as an option contract. See *Dodek* v. *CF 16 Corporation,* 537 A.2d 1086, 1094 (D.C. App. 1988); *Dixon* v. *Haft,* 253 Md. 692, 696, 253 A.2d 715 (1969); *Broady* v. *Mitchell,* 572 S.W.2d 36, 40 (Tex. Civ. App. 1978). Our research discloses, however, that several jurisdictions have rejected such a bright line approach. See, e.g., *Platte Valley Bank* v. *B & J Construction, Inc.,* 44 Colo.

App. 21, 606 P.2d 455 (1980); *Vance* v. *Roberts,* 96 Fla. 379, 118 So. 205 (1928); *State* v. *Bakers Basin Realty Co.,* 138 N.J. Super. 33, 350 A.2d 236 (1975), aff'd, 74 N.J. 103, 376 A.2d 1189 (1977); *Interactive Properties Corporation* v. *Blue Cross & Blue Shield of Greater New York,* 114 Misc. 2d 255, 450 N.Y.S.2d 1001 (1982). These courts stress that the ultimate focus should be on the intent of the parties, and that the presence or absence of a liquidated damages or forfeiture clause is merely one factor to be considered in deriving that intent. We conclude that the view of these latter jurisdictions is the better one. Accordingly, we refuse to adopt the bright line approach urged by the defendants.

Having concluded that none of the defendants' arguments establishes per se that the agreement in question is an option contract, we now look to the factors cited by the trial court in support of its determination that the parties entered into a bilateral purchase and sale contract. In reaching its conclusion, the trial court found the following factors to be persuasive: the plaintiff and the defendants are referred to throughout the agreement as "Purchaser" and "Seller" rather than as "Optionee" and "Optioner"; the word option appears nowhere in the agreement except the title;[3] the agreement is devoid of any language granting the plaintiff an option; Anthony F. Cutaia, president of the plaintiff, testified that his company rarely takes options on property and generally enters into binding contracts to purchase; several letters exchanged between the parties' attorneys near the date of closing indicate the nature of the agreement as a bilateral purchase and sale contract; and, the fact that the principal documents that would be required from the plaintiff at the time of closing were attached to the agreement, i.e., the $700,000 promissory note, the purchase money mort-

---

[3] The word "option" does in fact appear once in the thirteen page agreement.

gage deed, and a personal guarantee of the mortgage note by Cutaia. We are satisfied that the trial court's determination that the parties intended to enter into a bilateral purchase and sale contract is amply supported by the record and is therefore not clearly erroneous.[4]

## II

The defendants' final claim relates to the trial court's award of a decree of specific performance in favor of the plaintiff. " '[A]n action for specific performance of a contract to sell real estate is an equitable action and is to be determined by equitable principles.' . . : The granting of specific performance of a contract to sell land is a remedy which rests in the broad discretion of the trial court depending on all of the facts and circumstances when viewed in light of the settled principles of equity." (Citation omitted.) *Frumento* v. *Mezzanotte,* 192 Conn. 606, 615, 473 A.2d 1193 (1984). It is settled law, however, that in an action for specific performance the plaintiff has the burden of proving all of the essential elements of his cause of action and the

---

[4] The record reveals that the plaintiff notified the defendants that it would not be ready, willing and able to purchase the property until October 3, 1985, or almost two weeks after the agreed upon closing date of September 20, 1985. The validity of the contract, however, is not affected by this relatively brief delay. "In real estate contracts, 'the fact that a specific time is fixed for payment or for conveyance does not make "time of the essence"—at least, it does not make performance at the *specified* time of the essence. Failure to pay at that time is not per se sufficient to terminate the seller's duty to convey; and failure to convey on the exact date does not per se discharge the buyer.' 3A Corbin, Contracts § 716, p. 365 (1960)." (Emphasis in original.) *Kakalik* v. *Bernardo,* 184 Conn. 386, 392, 439 A.2d 1016 (1981). The agreement does not specify that "time is of the essence" with respect to the date set for closing. Moreover, we conclude that the thirteen day delay was not an unreasonable one. See *John J. Brennan Construction Corporation, Inc.* v. *Shelton,* 187 Conn. 695, 714, 448 A.2d 180 (1982). Accordingly, the contract is not invalidated because of the plaintiff's inability to perform on the date set forth in the agreement for closing.

burden is primarily on him to show his right in equity and good conscience to the relief sought. See *DiBella* v. *Widlitz,* 207 Conn. 194, 199–200, 541 A.2d 91 (1988); *Frumento* v. *Mezzanotte,* supra, 615–16.

In evaluating whether the plaintiff was entitled to specific performance of the terms of the contract in this case, the trial court stated that it would grant such a remedy upon the application of a party "unless it would be unjust, oppressive, or otherwise inequitable to do so." The defendants claim that this standard employed by the trial court effectively relieved the plaintiff of its lawful burden of proving an entitlement to specific performance and improperly placed the onus upon the defendants to demonstrate that this remedy was not warranted in this case. We disagree. Although an inference might be drawn from the above-quoted language that the court shifted the burden to the defendants to prove that the plaintiff was not entitled to specific performance, the trial court's subsequent analysis of the issue in its memorandum of decision clearly indicates otherwise. The trial court undertook a proper balancing of the equities in deciding that a decree of specific performance was justified in this case and, when read as a whole, the memorandum of decision persuades us that the burden of proof was properly placed upon the plaintiff. We are not inclined to find error on the basis of an inference that the trial court improperly shifted the burden of proof where such inference is clearly refuted by the substantive analysis of the trial court.[5]

There is no error.

In this opinion PETERS, C. J., GLASS and COVELLO, Js., concurred.

[5] We are also reluctant to find error based upon an inference that the burden of proof was improperly shifted where the defendants failed to avail themselves of the opportunity to erase any ambiguity on this point by filing a motion for articulation. See Practice Book § 4051.

SHEA, J., concurring. I disagree with the conclusion of the majority that the agreement between the parties, despite its title, "Option Agreement," and the inclusion of provisions expressly discharging the plaintiff of liability in the event of its failure to purchase the property, imposed "a binding obligation upon the plaintiff to purchase the property." Paragraph 16 of the written contract is as follows: "In the event Purchaser, through no fault of Seller, fails to perform any of the obligations hereinbefore set forth, Purchaser shall forfeit all claims to the Premises described herein, and all deposits previously paid in pursuance of this Agreement prior to said default by the Purchaser shall be construed as full liquidated damages to Seller and Purchaser shall be discharged of any and all liability to Seller under this Agreement. The parties agree that such deposits that have been previously paid to the Seller shall be considered as full liquidated damages by reason of the fact that the parties will be unable to agree on actual damages suffered by the Seller by removal of the Premises from the sales market." In contrast, paragraph 17 provides that, upon default of the seller, "Purchaser may at its option: (a) enforce the terms hereof by action for specific performance; or (b) terminate this Agreement in which event all deposits and any and all interest thereon tendered by Purchaser to Seller shall be released and returned to Purchaser."

The majority concedes that "a distinguishing feature of an option contract is that it imposes no binding obligation on the option holder to complete the purchase." Because the "Option Agreement" provided for forfeiture as "full liquidated damages" of the deposits made by the plaintiff as the purchaser upon its failure to complete the purchase of the property and, in such event, discharged it from "all liability" under the agreement, no obligation to purchase has been imposed on the plaintiff beyond forfeiture of the deposits. In the same way

no obligation is imposed on the holder of a standard option to purchase property beyond loss of the price paid for the option. Therefore, I would follow the cases that have treated agreements like the one before us, which incorporate an option provision into a contract of sale in the form of a provision releasing the buyer from liability for failure to perform but forfeiting the deposit as liquidated damages, as having essentially the same legal consequences as an option contract. *Dodek* v. *CF 16 Corporation,* 537 A.2d 1086, 1094 (D.C. App. 1988); *Green Manor Corporation* v. *Tomares,* 266 Md. 472, 295 A.2d 212 (1972); *Dixon* v. *Haft,* 253 Md. 692, 696, 253 A.2d 715 (1969); *Broady* v. *Mitchell,* 572 S.W.2d 36, 40 (Tex. Civ. App. 1978).

I agree with the result, nevertheless, because the alternative ground relied upon by the trial court, that the plaintiff did effectively exercise its option to purchase within the time contemplated is adequately supported by the evidence. There was evidence that the parties were negotiating over modifications of the terms of their agreement and that the defendants made a counterproposal on the date originally scheduled for performance concerning an extension of the time of performance. These negotiations, as the court found, "belie any claim on the part of the seller that time was of the essence" while the parties were attempting to agree upon a modification of the "Option Agreement."